**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DORIS AGBEFE,** | ) | **PLAINTIFF DEMANDS** |
| | ) | **TRIAL BY JURY** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 19-cv-04397** |
| | ) | |
| **BOARD OF EDUCATION OF THE** | ) | |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT AND JURY DEMAND

Plaintiff, DORIS AGBEFE, by her attorneys, Elaine K.B. Siegel & Associates, P.C., and complains as follows regarding Defendant, Board of Education of the City of Chicago ("Board", sometimes "CPS"):

**PARTIES**

1.  Plaintiff is a 57-year-old (DOB February 4, 1962) female citizen of the State of Illinois and resides in the County of Cook, State of Illinois.

2.  Defendant Board of Education of the City of Chicago is a body politic and corporate, with its principal place of business in Chicago, Illinois. At all relevant times, Defendant employed more than 500 regular employees.

**JURISDICTION, VENUE, AND PREREQUISITES**

3.  Plaintiff brings this action for damages and equitable relief pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, *et seq.,* Title IX of the Education Amendments of 1972, 20 U.S.C §§ 1861, *et seq.*, and 42 U.S.C. § 1983.

4.  Jurisdiction for this action is conferred upon the Court by 28 U.S.C. §§ 1331 and 1343.

5.     Venue is appropriate pursuant to 28 U.S.C. § 1391 because Defendant is a resident of this judicial district and the events giving rise to this claim occurred in this district.

**JURY DEMAND**

6.     Plaintiff demands a jury trial on all issues so triable.

**FACTUAL BACKGROUND**

7.     Agbefe is a tenured teacher, hired by the Board in approximately October, 1991.

8.     Plaintiff Agbefe has been a science teacher at York Alternative High School ("York") since approximately 2014. York is a facility that services juveniles detained at Cook County Jail, allowing them to continue their education while incarcerated.

9.     In June 2015, Plaintiff was transferred to Division 9, the maximum security division.

10.     Since being transferred to Division 9, Plaintiff has been subjected to sexual harassment, unwarranted discipline, unfair performance evaluations, and differential terms and conditions of employment by the Board and its employees, including York's principal, Sharnette Sims, and James Ciesil, Deputy General Counsel for the Board of Education of the City of Chicago.

11.     Plaintiff's students frequently expose themselves and masturbate in class, stare at her while pleasuring themselves, and use sexually explicit language towards her.

12.     Plaintiff's students ridicule her in a demeaning and sexually suggestive form, making statements such as "she likes it," "she wants it, "and "she needs it."

13.     On occasion, the students have even touched Plaintiff inappropriately and threatened her personal safety.

2

14.     This behavior of the students took place on an almost daily basis while Plaintiff was assigned to District 9.

15.     Plaintiff complained of the behavior no less than 17 times during her time in Division 9.

16.     Though the administration promised Plaintiff that something would be done, and that the offending students would be removed from Plaintiff's class.   Generally the administration's response to Plaintiff's complaints is to remove a student from the classroom temporarily, with no consequences, and then return them to class the next day.

17.     Plaintiff was promised a meeting with Principal Sims regarding an incident with students, but Principal Sims failed to meet with Plaintiff.

18.     The sexual behavior violates the Student Code of Conduct for CPS ("SCC"). According to the SCC, inappropriate sexual conduct falls in the category of "most seriously disruptive behaviors," which includes "unwelcomed sexual conduct, indecent exposure, transmitting sexually suggestive image through information technology devices, or other sexual activities which do not involve the use of force."  The SCC recommends numerous interventions and consequences, such as suspension or termination from the program.

19.     The SCC also provides for consequences and interventions for "[p]rofane, obscene, indecne, and immoral or seriously offensive language and gestures,…harassment" based on sex and gender.

20.     York administration refuses to take appropriate steps as set forth in the SCC to address the behaviors, and in fact, prohibits discipline unless the teacher or other school staff can see a penis.

21.     Additionally, York administration disregard their obligations to notify authorities of student disciplinary action.  York has only reported a maximum of 10 incidents to CPS each year, resulting in a false and fraudulent picture of safety and security at York.

22.     The sexual harassment and lack of support from Defendants took a devastating toll on Agbefe, who was forced to take a medical leave of absence.

23.     During her treatment, Plaintiff also attempted to address the source of suffering, contacting the Board's compliance office, the Equal Opportunity Compliance Office ("EOCO"). No ameliorative action was taken.

24.     On or about May 17, 2018, Agbefe filed a charge of discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights complaining of discrimination based on sex and retaliation.  Those charges remain pending.

## OIG Investigation and Report

25.     In the Fall of 2016, the Office of the Inspector General ("OIG") conducted an investigation into allegations of fraudulent practices at York.

26.     In a report dated September 12, 2017, the Office of the Inspector General stated that York engaged in a practice of falsely inflating enrollment and attendance data and awarding credits that were not earned.  The OIG also found that multiple teachers were pressured into issuing credits to students who had not earned them.

27.     The OIG report also revealed sexual improprieties at York, finding that many of the teachers interviewed were discouraged from reporting dangerous incidents at the school. These incidents include:  assaults, chronic classroom masturbation, and threatening conduct by an organized faction of students who committed sexual assaults in the jail.

28.     Based on the findings of its investigation, the OIG recommended that Principal Sims be terminated.

29.     In reaction to the OIG report, the Board purported to conduct their own investigation, and removed Principal Sims from York.

30.     Plaintiff was interviewed by James Ciesil, Deputy General Counsel for the Board, who led the investigation. In response to his questions, Plaintiff confirmed the allegations that her colleagues made to the OIG.

31.     Additionally, Plaintiff confided in Mr. Ciesil that she too felt unsafe at work, and that students were masturbating in the classroom and making inappropriate sexual advances.

32.     In candor, Plaintiff told Mr. Ciesil that she felt she had been pressured into giving an unearned credit to a student.

33.     Due to the nature of the report, Mr. Ciesil stated that employee names would be redacted for confidentiality. However, the investigative report was partially redacted and published in the Chicago Sun-Times and other media outlets.

34.     The poorly redacted report disclosed Plaintiff's name explicitly, and her grievances with York.

35.     During his investigation, Mr. Ciesil found that nearly every teacher interviewed stated that a "threat" by a student at York is a rare event.

36.     Mr. Ciesil concluded that many teachers stated that they had never been threatened in a manner which left them in fear for their bodily safety or felt sexually compromised.

37.     Mr. Ciesil also stated that experts that entered York from the Network or Central Office had never seen a student threaten anyone.

38.     Mr. Ciesil singled out Plaintiff as the only person he interviewed to express fear for their safety while at York, portraying Plaintiff as overreacting and misrepresenting the situation.

39.     In addition, Ciesil expressly stated that there was a "racial" element to the OIG investigation, and insinuated that those teachers and staff who were critical of Principal Sims and York were biased by race

40.     The Board's release of the investigative report was unprecedented.  They have never released a public report attacking an investigation by OIG.

41.     After Ciesil's report was released, the Network Chief recommended that everyone read the report, vindicating Dr. Sims.

42.     The CEO of CPS, Forrest Claypool issued a statement thanking Principal Sims, and apologizing to her for the "blight on her reputation."

43.     Plaintiff quickly felt the repercussions from the interview with Mr. Ciesil and the resulting report.

44.     Upon returning to work, Dr. Sims said that her family would seek vengeance against those responsible for her removal.

45.     Dr. Sims is actively bringing staff and her family to work against those that disclosed improper practices.

46.     In May of 2017, Principal Sims gave Plaintiff a performance evaluation of "not proficient."

47.     Plaintiff disagreed with the performance evaluation and filed a grievance, in which she prevailed.  Nonetheless, Plaintiff's adjusted evaluation still does not reflect Plaintiff's actual performance.

48.     Having exhausted all avenues with the York administration, Plaintiff took her concerns to the Board itself.  Board counsel Ciesel noted that the school had security cameras and offered to place an additional staff member in the classroom.  When Plaintiff stated that those measures were not enough to rectify the behaviors of the perpetrators, Ciesil responded that when Plaintiff chose to work at York she clearly knew that she was signing up to work inside a jail and that her students would be inmates charged with serious crimes.

<u>**COUNT I**</u>
<u>**SEX DISCRIMINATION IN VIOLATION OF TITLE IX**</u>

1-48.   Plaintiff repeats and realleges paragraphs 1 through 48 above as though fully set forth herein.

49.     Title IX of the Education Amendments of 1972, 20 U.S.C §§ 1861, *et seq*. ("Title XI"), prohibits employment discrimination on the basis of sex in the terms, conditions, salary and benefits of its employees.

50.     At all material times, Defendant CPS was receiving federal funding, as contemplated by Title IX.

51.     The Board created and/or subjected Plaintiff to a hostile work environment in violation of Title IX, because:

a.  Plaintiff was a member of a protected class;

b.  She was subjected to sexual harassment by her students;

c.  She was subjected to harassment based on her sex; and

d.  She was subjected to a hostile environment created by the Board's failure to follow policies and procedures, failure to properly investigate and/or properly address the sexual harassment.

52.     The harassment that Plaintiff suffered on the basis of her sex that was severe, pervasive, and objectively offensive.

53.     Defendant CPS had the authority to take remedial action to correct the sexual harassment.

54.     Defendant CPS was deliberately indifferent to known acts of discrimination and harassment against Plaintiff.

55.     The Board was aware that Agbefe was being subjected to discrimination and harassment on a routine basis.  As matters escaled, Agbefe explained that such actions were affecting her mental and physical well-being, but her pleas for corrective action were ignored.

56.     As a proximate result of the Defendant's discriminatory actions, Agbefe has suffered lost wages and/or benefits, emotional distress, damage to her reputation, compensatory damages, and has incurred attorney's fees and costs.

WHEREFORE, Plaintiff Doris Agbefe prays that this Honorable Court find that Defendant Board engaged in discriminatory conduct against her, and enter a judgment granting the following relief:

A.     Award Plaintiff money reasonably calculated to compensate her for all the monetary damages sustained as a result of the discrimination by Defendants;

B.     Award liquidated and punitive damages for Defendant's willful and/or malicious acts;

C.     Award reasonable attorneys' fees and costs; and

F.     Award such other relief as it may deem just and equitable.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE IX

1-56.    Plaintiff repeats and realleges paragraphs 1 through 56 above as though fully set forth herein.

57.    Title IX prohibits retaliation against employees who oppose sex discrimination.

58.    Agbefe engaged in statutorily protected activity in one or more of the following ways: (a) by opposing the sex discrimination and harassment to which she was subjected; (b) by lodging repeated complaints indicating that she was being subjected to such discrimination and harassment; (c) by participating in an investigation by the Board through Board counsel Jim Ciesil.

59.    The Board knew about Plaintiff's protected activity.

60.    In response to this protected activity, the Board retaliated against Agbefe by refusing to protect her against discrimination and harassment, denying leave/accommodation, unwarranted discipline, and giving her false evaluations.

61.    The Board retaliated against Agbefe with malice and/or reckless indifference to Agbefe's federally protected rights.

62.    As a proximate result of the Board's retaliatory actions, Agbefe has suffered lost wages, emotional distress, and compensatory damages and has incurred attorney's fees and costs.

WHEREFORE, Plaintiff Doris Agbefe prays that this Honorable Court find that Defendant Board engaged in retaliatory conduct against her, and enter a judgment granting the following relief:

A.    Award Plaintiff money reasonably calculated to compensate her for all the monetary damages sustained as a result of the retaliation by Defendants;

B.      Award liquidated and punitive damages for Defendant's willful and/or malicious acts;

C.      Award reasonable attorneys' fees and costs; and

D.      Award such other relief as it may deem just and equitable.

<u>**COUNT III**</u>
<u>**RACE DISCRIMINATION IN VIOLATION OF TITLE VI**</u>

1-62.   Plaintiff repeats and realleges paragraphs 1 through 56 above as though fully set forth herein.

63.     Title VI of the Civil Rights Act of 1964, 42 U.S.C §§ 2000d, *et seq*. ("Title VI"), prohibits employment discrimination on the basis of race in the terms, conditions, salary and benefits of its employees.

64.     At all material times, Defendant Board was receiving federal funding, as contemplated by Title VI.

65.     The Board discriminated against Plaintiff based on her race, African-American, in violation of Title IX, because:

a.   Plaintiff was a member of a protected class;

b.   Defendant Board ignored Plaintiff's complaints of hostile work environment;

c.   Defendant Board refused Plaintiff's requests to transfer to a different division when she feared for her personal safety, or take other ameliorative action;

d.   Defendant Board published a report specifically naming Plaintiff Agbefe, alleging that she was the only teacher at York with security concerns;

e. Defendand Board, through its legal counsel, stated that Agbefe should have expected the sexually harassing behavior of the students when she went to teach at York;

f. Defendant Board issued a negative and false performance evaluation to Plaintiff; and

g. Similarly-situated individuals of a different race were treated more favorably than Plaintiff.

66. The Board was aware that Agbefe was being subjected to discrimination and harassment on a routine basis. As matters escalated, Agbefe explained that such actions were affecting her mental and physical well-being, but her pleas for corrective action were ignored.

67. As a proximate result of the Defendant's discriminatory actions, Agbefe has suffered lost wages, emotional distress, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

WHEREFORE, Plaintiff Doris Agbefe prays that this Honorable Court find that Defendant Board engaged in discriminatory conduct against her, and enter a judgment granting the following relief:

A. Award Plaintiff money reasonably calculated to compensate her for all the monetary damages sustained as a result of the discrimination by Defendants;

B. Award liquidated and punitive damages for Defendant's willful and/or malicious acts;

C. Award reasonable attorneys' fees and costs; and

D. Award such other relief as it may deem just and equitable.

## COUNT IV
## RETALIATION IN VIOLATION OF TITLE VI

1-67.     Plaintiff repeats and realleges paragraphs 1 through 67 above as though fully set forth herein.

68.     Title VI prohibits retaliation against employees who oppose race discrimination.

69.     Agbefe engaged in statutorily protected activity by participating in Board Counsel's investigation.

70.     Board Counsel stated in his report that the OIG report, and the staff members who were critical of Principal Sims and/or York were racially motivated.  Board Counsel also stated in his report that Agbefe was the only teacher interviewed who stated that she felt unsafe in her work environment, and that she received conflicting advice from DOC and York regarding how to report threats.

71.     In response to this protected activity, the Board retaliated against Agbefe by refusing to protect her against discrimination and harassment, denying leave/accommodation, false evaluations, and releasing and publishing a report with her statements unredacted.

72.     The Board retaliated against Plaintiff with malice and/or reckless indifference to Agbefe's federally protected rights.

73.     As a proximate result of the Board's retaliatory actions, Plaintiff has suffered lost wages, emotional distress, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

WHEREFORE, Plaintiff Doris Agbefe prays that this Honorable Court find that Defendant Board engaged in retaliatory conduct against her, and enter a judgment granting the following relief:

12

D.     Award Plaintiff money reasonably calculated to compensate her for all the monetary damages sustained as a result of the retaliation by Defendants;

E.     Award liquidated and punitive damages for Defendant's willful and/or malicious acts;

F.     Award reasonable attorneys' fees and costs; and

G.     Award such other relief as it may deem just and equitable.

**COUNT V**
**VIOLATION OF 42 U.S.C. § 1983**
**DEPRIVATION OF EQUAL PROTECTION**

1-73.     Plaintiff Smith repeats and realleges paragraphs 1 through 73 above as though fully set forth herein.

74.     At all times relevant herein, Defendant Board and its officers were acting under color of state law.

75.     The Board deprived Plaintiff of her right to Equal Protection of the laws by failing to investigate Plaintiff's complaints of sexual harassment and hostile work environment, failing to appropriately discipline students and maintain order in the classroom, covering up and/or failing to report student behavioral issues, and manifesting deliberate indifference to the on-going harassment of Plaintiff and other female employees.

76.     The Board has unconstitutional policies or customs of failing to report sexually-motivated misbehavior of the students, failing to investigate the misconduct of the students at York, failing to adequately train and supervise School District employees with regard to maintaining, preserving, and protecting teachers and staff from violations of their rights to a harassment-free workplace, personal security, bodily integrity, and equal protection of the laws.

77.     On information and belief, the School District has followed these unconstitutional customs and policies not only with regards to Plaintiff, but also with regard to criminal and/or tortious misconduct committed against other school district employees.

78.     The School District's policies and/or practices constitute disparate treatment of females and had a disparate impact against female employees.

79.     As a proximate result of the Defendant's actions, Agbefe has suffered lost wages and/or benefits, emotional distress, damage to her reputation, compensatory damages, and has incurred attorney's fees and costs.

WHEREFORE, Plaintiff Doris Agbefe prays that this Honorable Court find that Defendant Board's conduct violated Plaintiff's rights under the 14th Amendment to the United States Constitution, and enter a judgment granting the following relief:

G.      Award Plaintiff money reasonably calculated to compensate her for all the monetary damages sustained as a result of the conduct of Defendants;

H.      Award liquidated and punitive damages for Defendant's willful and/or malicious acts;

I.      Award reasonable attorneys' fees and costs; and

J.      Award such other relief as it may deem just and equitable.

DATED:  JUNE 28, 2019

Respectfully submitted,


By:     /s/ Elaine K.B. Siegel
        Attorney for Plaintiff


OF COUNSEL:

Elaine K.B. Siegel & Assoc., P.C.
53 West Jackson Blvd., Suite 405
Chicago, IL  60604
Telephone: (312) 583-9970
Facsimile: (312) 583-9972 (upon prior
notice)