UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DORIS AGBEFE, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 4397 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Doris Agbefe, a public school teacher, brings this suit against the Chicago Board of Education, alleging that it violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and the Fourteenth Amendment's Equal Protection Clause by failing to properly address unchecked sexual harassment by her students and by retaliating against her for complaining about the harassment. Doc. 1. The Board moves to dismiss the complaint under Civil Rule 12(b)(6). Doc. 14. The motion is granted in part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Agbefe's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013)

1

(internal quotation marks omitted). The facts are set forth as favorably to Agbefe as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Agbefe has been a Chicago public school teacher for decades. Doc. 1 at ¶ 7. Most recently, she has taught at York Alternative High School, a school for juveniles detained in the Cook County Jail. *Id*. at ¶ 8. Since mid-2015, Agbefe has taught in Division 9, the Jail's maximum security division. *Id*. at ¶ 9.

While teaching in Division 9, Agbefe has endured sexual harassment from her students almost every day. *Id*. at ¶¶ 10-14. Her students expose themselves to her, masturbate in class while staring at her, use sexually explicit and demeaning language toward her, and at times touch her inappropriately or threaten her. *Id*. at ¶¶ 11-13. Agbefe has repeatedly complained to the York administration about this misbehavior, but the administration's response has been weak and ineffectual. *Id*. at ¶¶ 16-17, 20, 23. The administration also underreports student misconduct to the Chicago Public Schools system, making York seem like a safer environment than it in fact is. *Id*. at ¶ 21. The Board has been unhelpful as well; in response to Agbefe's complaints, it offered only to place an additional staff member in her classroom—a measure that would not have improved her students' behavior. *Id*. at ¶¶ 23, 48. The combination of unbearable harassment from her students and lack of support from her administration forced Agbefe to take a medical leave of absence. *Id*. at ¶ 22.

In September 2017, the Chicago Public Schools Office of the Inspector General ("OIG") released a report that was highly critical of York and its administration. *Id*. at ¶¶ 26-27. The report accused the school of inflating its enrollment and attendance data, pressuring teachers to

issue unearned credit to students, and discouraging teachers from reporting incidents of violence and sexual misconduct. *Ibid*. The report recommended the termination of York's principal, Sharnette Sims. *Id*. at ¶¶ 10, 28.

In response to the OIG report, the Board fired Sims and conducted its own investigation of York. *Id*. at ¶ 29. The investigation was led by James Ciesil, the Board's deputy general counsel. *Id*. at ¶ 30. In an interview with Ciesil, Agbefe confirmed many of the OIG report's findings, including that she endured inappropriate sexual behavior in the classroom and that she was pressured into giving unearned credit to a student. *Id*. at ¶¶ 30-32.

By contrast to Agbefe, most teachers at York did not agree with the OIG report's findings. *Id*. at ¶¶ 35-38. Nearly every teacher interviewed by Ciesil reported that it was rare to be threatened by a student, and experts visiting York had never witnessed a threat. *Id*. at ¶¶ 35-37. A report that Ciesil prepared after his investigation singled out Agbefe as the only person he interviewed who expressed fear for her safety while teaching at York and portrayed her as dishonest and overly sensitive. *Id*. at ¶ 38. Ciesil's report also suggested that those who were critical of York and of Sims were motivated by racial bias. *Id*. at ¶ 39. Although Ciesil promised Agbefe that her name would not appear in any publicly disclosed version of his report, the version published in the *Chicago Sun-Times* named Agbefe and disclosed her complaints about York. *Id*. at ¶¶ 33-34.

Ciesil's report vindicated Sims, whom the Board reinstated as principal. *Id*. at ¶¶ 41-42, 44. When she returned to York, Sims vowed that her family would seek revenge against those responsible for her firing. *Id*. at ¶ 44. Sims has made good on that promise, using her family and York staff to "work against" Agbefe and others who provided negative comments to the OIG. *Id*. at ¶¶ 43, 45.

**Discussion**

The complaint asserts five counts against the Board. First, it claims that Agbefe's students' unrelenting sexual harassment rendered her classroom a hostile work environment, in violation of Title IX. *Id*. at ¶¶ 49-56. Second, it claims that the Board retaliated against her for reporting the sexual harassment, also in violation of Title IX. *Id*. at ¶¶ 57-62. Third, it claims that the Board discriminated against her because she is African American, in violation of Title VI. *Id*. at ¶¶ 63-67. Fourth, it claims that the Board retaliated against her for her participation in Ciesil's investigation, also in violation of Title VI. *Id*. at ¶¶ 68-73. And fifth, it claims under § 1983 that the Board mistreated her because she is a woman, in violation of the Equal Protection Clause. *Id*. at ¶¶ 74-79. Also, Agbefe intends to amend her complaint to add a Title VII claim once she receives a right-to-sue notice from the Equal Employment Opportunity Commission. Docs. 32, 45-47, 49-52, 56, 58-60.

**I.     Title VI Claims**

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Board argues that Agbefe's Title VI claims should be dismissed because Title VI does not extend to claims arising from its employment relationship with her. Doc. 14 at 12-13. The Board is correct.

By its terms, Title VI may not be construed "to authorize action … by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization *except where a primary objective of the Federal financial assistance is to provide employment*." 42 U.S.C. § 2000d-3 (emphasis added). Congress enacted § 2000d-3 out of "concern that the receipt of any form of financial assistance might render an employer subject to

the commands of Title VI rather than Title VII." *Johnson v. Transp. Agency*, 480 U.S. 616, 627 n.6 (1987). In *Ahern v. Board of Education of Chicago*, 133 F.3d 975 (7th Cir. 1998), the Seventh Circuit interpreted § 2000d-3 to limit employment discrimination claims under Title VI to circumstances in which "(1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid." *Id.* at 978 (quoting *Trageser v. Libbie Rehab. Ctr., Inc.*, 590 F.2d 87, 89 (4th Cir. 1978)); *see also Doe ex rel. Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411, 419 n.12 (7th Cir. 1986) ("Although section 2000d-3 expressly addresses only agency action, courts have uniformly held that, even in private actions under Title VI, the primary objective of the federal grant must be to provide employment."), *overruled on other grounds by Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996). Agbefe's allegations satisfy neither prong of the *Ahern* test.

As to the first prong, Agbefe alleges that the Board receives federal funding, Doc. 1 at ¶ 64, but she says nothing about that aid's "primary objective," let alone that it is to "provid[e] employment," *Ahern*, 133 F.3d at 978. That failure is enough to sink her claim. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Lekas v. Briley*, 405 F.3d 602, 614-15 (7th Cir. 2005) (holding that the plaintiff abandoned a claim where "he did not present legal arguments or cite relevant authority to substantiate that claim in responding to defendants' motion to dismiss").

Even if the point were not forfeited, Agbefe could not meet the first *Ahern* prong. As this court noted in a similar suit involving York and the fallout from the OIG report, York receives federal education funds under Title I of the Elementary and Secondary Education Act, 20 U.S.C. § 6301 *et seq*. *See Veljkovic v. Bd. of Educ. of Chi.*, 2020 WL 7626735, at *3 (N.D. Ill. Dec. 22, 2020). But the statutorily defined purpose of Title I is "to provide all children significant opportunity to receive a fair, equitable, and high-quality education, and to close educational achievement gaps." 20 U.S.C. § 6301. Because the "primary objective" of Title I aid is to educate students, and because employing teachers is only a means to that end, Agbefe's claims fail to satisfy the first *Ahern* prong. In fact, the Department of Education, which administers Title I, has promulgated regulations enumerating the statutes that, in its considered view, have employment as a primary objective, and Title I is not among them. *See* 34 C.F.R. § 100.3(c)(1); *id*. pt. 100 app. A.

As to the second *Ahern* prong, Agbefe argues that the Board's conduct had a discriminatory effect on York students. Doc. 22 at 7-9. True enough, race discrimination in teacher employment can sometimes cause discrimination against students, the primary beneficiaries of Title I funds. *See Ahern*, 133 F.3d at 977 (explaining that a 1977 desegregation plan for the Chicago Public Schools system included faculty hiring provisions because "the Title VI ban against discrimination in federal programs might be violated by certain patterns of faculty and staff assignments"); *Afogho ex rel. A.A. v. Ill. Cent. Sch. Dist. 104 Bd. of Educ.*, 421 F. Supp. 3d 585, 593-94 (S.D. Ill. 2019) (holding that the complaint sufficiently alleged that race discrimination against Black basketball coaches denied students "meaningful, nondiscriminatory participation in school activities"); 34 C.F.R. § 100.3(c)(3) (providing that Title VI applies to employment practices "to the extent necessary to assure equality of opportunity to, and

nondiscriminatory treatment of, beneficiaries"). Agbefe's allegations do not match this theory, however, because she does not identify any nexus between the Board's racially discriminatory treatment of her and any substandard educational environment for York's students.

In her opposition brief, Agbefe explains that the Board "subjected her and the students at York to improper educational practices," Doc. 22 at 8 (citing Doc. 1 at ¶¶ 25-29), "failed to follow proper disciplinary protocol, resulting in a dangerous classroom environment," *ibid*. (citing Doc. 1 at ¶¶ 26-29), and reinstated Sims as principal for race-based reasons, *ibid*. (citing Doc. 1 at ¶¶ 7-8, 25-29, 42-44). She concludes that in reinstating Sims, the Board chose "to leave the York students languishing with substandard instruction … in addition to the hostile educational environment in [Agbefe's] classroom," though she alleges that the Board would have intervened on the students' behalf if York's principal had been white. *Id*. at 9.

In staking her Title VI claims on this theory, Agbefe effectively abandons any argument that York students were harmed by the Board's racially *discriminatory* treatment of *her*, and instead suggests that York students were harmed by the Board's racially *preferential* treatment of *Sims*. That theory does not satisfy the second *Ahern* prong, even putting aside the fact that the complaint's factual allegations do not support it. The reason is plain: it has absolutely nothing to do with Agbefe, which necessarily means that she is not the proper plaintiff to vindicate whatever (if any) Title VI violations might arise from the Board's allegedly preferential treatment of Sims. *See Veljkovic*, 2020 WL 7626735, at *4 (discussing Title VI's "zone of interests").

In sum, because Agbefe does not satisfy the *Ahern* test, her Title VI claims are dismissed.

## II. Title IX Claims

The Board argues that because Agbefe's Title IX claims arise from her employment with the Board, they are precluded by Title VII. Doc. 14 at 7-8; Doc. 23 at 2-3. In *Waid v. Merrill*

7

*Area Public Schools*, 91 F.3d 857 (7th Cir. 1996), *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009), the Seventh Circuit held that Title VII precludes other causes of actions for employment discrimination to the extent that Title VII would provide an equivalent remedy. *See id*. at 861-62. As the court explained, "[w]hen Congress creates a comprehensive statutory scheme for protecting a right, it may impliedly express the intention that this scheme should be exclusive." *Id*. at 861 (citing *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981)). Because Title VII "provides a comprehensive statutory scheme for protecting rights against discrimination in employment," the court added, "[i]t is well-established that Title VII's own remedial mechanisms are the only ones available to protect the rights created by Title VII." *Id*. at 861-62. Applying these principles, the Seventh Circuit held that the plaintiff in *Waid*, who alleged employment discrimination, could not invoke Title IX to seek injunctive relief, which was the only form of relief available under Title VII at the time. *Id*. at 862; *see also Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979) (holding that 42 U.S.C. § 1985(3) cannot be the basis for a claim to vindicate a right protected by Title VII); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 828-29 (1976) (holding that Title VII is the "exclusive" remedy for federal employment discrimination).

Agbefe's Title IX claims sound squarely in employment discrimination. Doc. 1 at ¶ 51 ("The Board created and/or subjected Plaintiff to a hostile work environment in violation of Title IX … ."); *id*. at ¶ 57 ("Title IX prohibits retaliation against employees who oppose sex discrimination."). And Agbefe does not identify any remedy she seeks under Title IX that would be unavailable under Title VII. Under *Waid*, then, she cannot bring a Title IX claim. *See Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 789-91 (N.D. Ill. 2015) ("Although *Waid* dealt only with a claim for equitable relief (because that was all that was available to Ms. Waid under

[Title VII] at the time her claim arose), other courts in this district have interpreted *Waid* as holding that Title VII precludes any Title IX employment discrimination suit. … Ludlow's Title IX claim is one for employment discrimination and therefore pre[cluded] under Title VII … ."); *Howard v. Bd. of Educ. of Sycamore Cmty. Unit Sch. Dist. No. 427*, 893 F. Supp. 808, 814-15 (N.D. Ill. 1995) (dismissing a Title IX claim for sex-based employment discrimination "as being precluded by Title VII").

Granted, some decisions hold that, *Waid* notwithstanding, Title VII does not preclude certain Title IX retaliation claims. *See*, *e.g.*, *Cieslik v. Bd. of Educ. of Chi.*, 2021 WL 1172575, at *5-6 (N.D. Ill. Mar. 29, 2021); *Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, 171 F. Supp. 3d 830, 839-40 (W.D. Wis. 2016). In those cases, however, the plaintiffs engaged in protected conduct by opposing their employers' actions regarding matters within the heartland of Title IX—discrimination in *education*, not discrimination in *employment*. *See Cieslik*, 2021 WL 1172575, at *5 (explaining that the defendant's Title VII preclusion argument failed "[i]n this particular case" because "the Plaintiffs alleged their opposition to sexual harassment in an educational setting, not in the context of an employer-employee relationship"); *Burton*, 171 F. Supp. 3d at 834-35 (same, where the plaintiff's protected conduct was advocating for a student who alleged sexual harassment by a professor); *see also id*. at 840 (relying on *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005), "which allowed a teacher to bring a retaliation claim under Title IX based on allegations that he received negative performance reviews and was removed from a coaching position in retaliation for complaining about unequal funding for a girls basketball team"). In such circumstances, it stands to reason that Title VII does not preclude a Title IX retaliation claim, as it is difficult to see how Title VII would provide a cause of action on a retaliation theory in the absence of an unlawful *employment* practice. *See*

42 U.S.C. § 2000e-3(a) (barring retaliation against an employee "because he has opposed any *practice made an unlawful employment practice by [Title VII]*, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under [Title VII]*") (emphasis added).

Here, the theory behind Agbefe's Title IX retaliation claim is that the Board subjected her to retaliation for opposing sex-based discrimination against *herself*, not against her students. *See* Doc. 1 at ¶ 58 (describing Agbefe's protected activity as "opposing the sex discrimination and harassment *to which she was subjected*") (emphasis added). In other words, the alleged retaliation against Agbefe was due to her opposition to a discriminatory employment practice; such a claim, unlike the ones in *Cieslik*, *Burton*, and *Jackson*, is exactly what Title VII allows. And thus, under the preclusion principle set forth in *Waid*, Agbefe may not bring that claim under Title IX.

### III. Equal Protection Claim

The Board argues that Agbefe fails to state a § 1983 equal protection claim, which necessarily rests on a *Monell* theory. Doc. 14 at 13-15; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Agbefe did not respond to this argument in her opposition brief. Doc. 22. Accordingly, in its reply brief, the Board urged the court to deem the *Monell* claim forfeited. Doc. 23 at 5-6.

The court ultimately allowed Agbefe to file a surreply addressing the *Monell* claim. Doc. 60. In her surreply, Agbefe disputes that she forfeited that claim, Doc. 63 at 1-3, 5-6, and defends it on its merits, *id*. at 3-5. As to forfeiture, Agbefe points out that her opposition brief requested leave to amend her complaint under Civil Rule 15(a)(2). *Id*. at 2 (citing Doc. 22 at 13). While the court disagrees with Agbefe's contention that her opposition brief adequately responded to the Board's *Monell* argument, the court agrees that she properly sought leave to

replead, a request that the court would have granted. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend … ."). And because the *Monell* issue has been fully briefed by the Board in its motion to dismiss, Doc. 14 at 13-15, and its response to Agbefe's surreply, Doc. 66, the court will address it now rather than await an amended complaint.

To state a *Monell* claim, "[a] plaintiff must [allege facts] show[ing] that the violation was caused by (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). The Board argues that the complaint fails to allege facts that would support a *Monell* claim through any of these avenues. Doc. 14 at 13-15; Doc. 66. The Board is mistaken.

It is necessary to address only the second way to state a *Monell* claim—allegations of an unofficial but widespread practice. As to that theory, the Board argues only that "[Agbefe's] claim consists of alleged discriminatory and retaliatory conduct at one school, … which is not enough to support a *Monell* claim." Doc. 14 at 14; *see also* Doc. 66 at 2 (raising no new arguments on this front). To support its argument, the Board cites *Cornfield ex rel. Lewis v. Consolidated High School District No. 230*, 991 F.2d 1316 (7th Cir. 1993), which affirmed the dismissal of a *Monell* claim where plaintiff did "not allege that there [wa]s a widespread practice of nonconsensual and unconstitutional searches of students in [the school district] that would support a conclusion of municipal liability." *Id*. at 1326; *see* Doc. 14 at 14.

*Cornfield* is easily distinguished, as Agbefe's complaint *does* allege a widespread practice. Specifically, the complaint alleges that the Board has a "polic[y] or custom[]" not to

11

"report sexually-motivated misbehavior of the students," "investigate the misconduct of the students," or "adequately train and supervise School District employees with regard to maintaining, preserving, and protecting teachers and staff" from harassment and violence. Doc. 1 at ¶ 76. The complaint further alleges that this practice extends beyond Agbefe's own situation and affected other Board employees. *Id*. at ¶ 77. And the complaint alleges that the practice has, unsurprisingly, had a "disparate impact against female employees." *Id*. at ¶ 78. True enough, the complaint is light on details as to other teachers' experiences with sexual harassment by students in the classroom, but it does allege that such harassment occurs and that the Board's practice is to ignore it. And even if it were true that the alleged practice spreads no further than York, the Board provides no authority as to why a practice that affects several teachers in a single school cannot give rise to *Monell* liability.

Accordingly, Agbefe states a viable § 1983 equal protection claim.

## IV. Statute of Limitations

The Board argues that all Agbefe's claims are untimely. Doc. 14 at 4-6; Doc. 23 at 1-2. Because only the § 1983 equal protection claim survives dismissal, the court addresses the timeliness of only that claim.

At the outset, Agbefe argues that the statute of limitation governing her § 1983 claim is four years, under 28 U.S.C. § 1658(a), instead of the typical statute of limitations for § 1983 claims, which is two years. Doc. 22 at 5; *see Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019) ("[W]e look to the law of the state in which the personal injury occurred to determine the length of the [§ 1983] statute of limitations. Under Illinois law, a plaintiff must bring a personal injury action within two years after its accrual."). Section 1658(a) sets a four-year limitations period for "civil action[s] arising under an Act of Congress enacted after" December 1, 1990. 28 U.S.C. § 1658(a); *see* Federal Courts Study Committee Implementation

Act of 1990, Pub L. No. 101-650, tit. III, § 313(a), 104 Stat. 5104, 5115. Agbefe tries to fit her equal protection claim under § 1658(a) by relating it to 42 U.S.C. § 1981, which was amended in 1991. *See* Civil Rights Act of 1991, Pub. L. No. 102-166, § 101, 105 Stat. 1071, 1071-72. That argument fails because § 1981 is about *racial* discrimination and Agbefe's equal protection claim is based on *sex* discrimination. *See* 42 U.S.C. § 1981(a); Doc. 1 at ¶¶ 75-78. In any event, because "§ 1983 remains the exclusive remedy for violations of § 1981 committed by state actors," the statute of limitations for any § 1983 claim against the Board—including for racial discrimination under § 1981—would be two years. *Campbell v. Forest Preserve Dist. of Cook Cnty.*, 752 F.3d 665, 671 (7th Cir. 2014); *see ibid.* ("[Section] 1981 does not create a private right of action against state actors … ."). The governing statute of limitations for Agbefe's equal protection claim is two years, not four.

Agbefe filed this suit on June 28, 2019. Doc. 1. To be timely under a two-year limitations period, her § 1983 claim must therefore arise from conduct occurring on or after June 28, 2017. The § 1983 claim is premised on the sexual harassment that Agbefe faced from her students and the Board's insufficient response to her complaints of that harassment. Doc. 1 at ¶ 75 ("The Board deprived [Agbefe] of her right to Equal Protection of the laws by failing to investigate Plaintiff's complaints of sexual harassment and hostile work environment, failing to appropriately discipline students and maintain order in the classroom, covering up and/or failing to report student behavioral issues, and manifesting deliberate indifference to the on- going harassment of Plaintiff and other female employees.").

According to Agbefe, her complaint alleges that "the hostile work environment at York persisted even after the OIG cited it in his September … 2017 report." Doc. 22 at 6. The complaint does not expressly allege that, but nor does it allege that the harassment ceased at any

particular point. (Although the complaint mentions a medical leave of absence, Doc. 1 at ¶ 22, it does not state the date of that leave.) The complaint also seems to suggest that Agbefe taught at York at some point after the release of Ciesil's report, *id*. at ¶ 43 ("[Agbefe] quickly felt the repercussions from the interview with Mr. Ciesil and the resulting report."), which would necessarily mean she taught there at some point after the September 2017 release of the OIG's report, *id*. at ¶ 26. The murkiness in the timeline favors Agbefe at this stage, as the court cannot conclude from the complaint—or any other materials it may consider on a Rule 12(b)(6) motion—that all the alleged sex-based misconduct by Agbefe's students, and all the Board's insufficient response to her complaints about that misconduct, occurred before June 28, 2017. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (holding, in the Title VII context, that a hostile work environment claim is timely "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period"); *see also Barnes v. Bd. of Trs. of the Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020) (equating § 1983 equal protection claims in the employment context with Title VII claims); *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1029-30 (7th Cir. 2003) (same).

The Board emphasizes that Agbefe "has not alleged she was subject to any to sexual harassment and physical threats by the student-detainees after [June] 28, 2017." Doc. 23 at 2. But as noted, neither does the complaint allege that the harassment ceased *before* that date, and there is no requirement that it be plain from the face of the complaint that Agbefe's claims are timely, as a complaint need not plead around a statute of limitations defense. *See Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014) ("Because complaints need not anticipate and attempt to plead around defenses, a motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations

14

of the complaint itself set forth everything necessary to satisfy the affirmative defense.") (citation and internal quotation marks omitted).

## Conclusion

The Board's motion to dismiss is denied as to the § 1983 claim and granted as to the Title VI and Title IX claims. Although it is difficult to see how Agbefe might cure the deficiencies in the Title VI and Title IX claims, she will be given an opportunity to replead them. *See Runnion*, 786 F.3d at 519. If Agbefe wishes to replead the Title VI and Title IX claims, she must file an amended complaint by June 2, 2021. If Agbefe does not replead within that timeframe, the dismissals of those claims will convert automatically to dismissals with prejudice, and the Board shall answer the surviving portions of the complaint by June 16, 2021.

May 11, 2021

_____
United States District Judge