**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Doris Agbefe, | ) | |
| Plaintiff, | ) | Case No. 19 CV 4397 |
| | ) | |
| v. | ) | The Honorable Gary S. Feinerman |
| | ) | |
| Board of Education of the | ) | |
| City of Chicago, | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO
<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Defendant the Board of Education of the City of Chicago (the "Board"), through its undersigned counsel, answers Plaintiff's First Amended Complaint [ECF No. 73] as follows:

**PARTIES**

1.       Plaintiff is a 59-year-old (DOB February 4, 1962) Black, female, citizen of the State of Illinois, who resides in the County of Cook, State of Illinois.

**<u>ANSWER</u>**:       Defendant admits its records reflect Plaintiff Doris Agbefe self-reported as a Black female born on February 4, 1962 and her last known address was in Chicago, Illinois in Cook County. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and therefore denies the same.

2.       Defendant Board of Education of the City of Chicago is a body politic and corporate, with its principal place of business in Chicago, Illinois. At all relevant times, Defendant employed more than 500 regular employees.

**<u>ANSWER</u>**:       Defendant admits the allegations of this paragraph.

## JURISDICTION, VENUE, AND PREREQUISITES

3.     Plaintiff brings this action for damages and equitable relief pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, et seq., Title IX of the Education Amendments of 1972, 20 U.S.C §§ 1861, et seq., and 42 U.S.C. § 1983.

**ANSWER**:     Defendant admits that Plaintiff has filed claims under the above cited statutes, but denies that Plaintiff was subject to unlawful harassment, discrimination, retaliation, and/or are entitled to any relief.

4.     Jurisdiction for this action is conferred upon the Court by 28 U.S.C. §§ 1331 and 1343.

**ANSWER**:     Defendant admits this Court has jurisdiction over this action, but denies that any unlawful conduct or wrongdoing for which it may be liable or that Plaintiff is entitled to any relief.

5.     Venue is appropriate pursuant to 28 U.S.C. § 1391, because Defendant is a resident of this judicial district and the events giving rise to this claim occurred in this district.

**ANSWER**:     Defendant admits that venue is proper, but denies any unlawful conduct or wrongdoing for which it may be liable or that Plaintiff is entitled to any relief.

## JURY DEMAND

6.     Plaintiff demands a jury trial on all issues so triable.

**ANSWER**:     Defendant admits Plaintiff demands a jury trial, but denies any unlawful conduct or wrongdoing for which it may be liable or that Plaintiff is entitled to any relief.

## FACTUAL BACKGROUND

7.     Plaintiff is a tenured teacher, hired by the Board in approximately October, 1991.

**ANSWER**:     Defendant admits Plaintiff was hired by the Board of Education on October 7, 1991. Defendant also admits that Plaintiff was a tenured teacher before retiring in October 1991. Defendant further admits that Plaintiff is now a retiree substitute teacher for the Board. Defendant denies the remaining allegations of this paragraph.

2

8.     Plaintiff has been a science teacher at York Alternative High School ("York") since approximately 2014. York is a facility that provides services to juveniles detained at Cook County Jail, allowing them to continue their education while incarcerated.

**ANSWER**:     Defendant admits Plaintiff was a teacher at York from December 17, 2013 to October 21, 2020 and has taught science during that time period. Defendant further admits York is a high school that serves juveniles who are being detained at the Cook County Department of Corrections, allowing them to continue their education while incarcerated. Defendant denies the remaining allegations of this paragraph.

9.     Plaintiff Agbefe has at all times fulfilled her job duties satisfactorily.

**ANSWER**:     Defendant denies the allegations of this paragraph.

10.     At all relevant times, the student population at York has been approximately 80% African-American, 20% Hispanic, with a negligible number of students from other racial and ethnic subgroups.

**ANSWER**:     Defendant admits that on the date of this filing, the student population at York is 76.8% Black, 20.8% Hispanic, 1.2% White, and 1.2% Other. Defendant denies the remaining allegations of this paragraph.

11.     At all relevant times, the great majority of the student population at York has been low income.

**ANSWER**:     Defendant admits that on the date of this filing, 82.1% of students at York are low income learners. Defendant denies the remaining allegations of this paragraph.

12.     In June 2015, Plaintiff was transferred to Division 9, the maximum-security division.

**ANSWER**:     Defendant admits that Plaintiff worked as a teacher in Division 9, which is a maximum-security division at York. Defendant denies that Plaintiff was "transferred" to Division 9 in June 2015.

13.     Since being transferred to Division 9, Plaintiff has been subjected to sexual harassment, unwarranted discipline, unfair performance evaluations, and differential terms and conditions of employment by the Board and its employees, including York's principal, Sharnette Sims, and James Ciesil, Deputy General Counsel for the Board of Education of the City of Chicago.

**ANSWER**:     Defendant admits Plaintiff worked in Division 9, but denies that she was "transferred." Defendant denies the remaining allegations of this paragraph.

14.     Plaintiff's students frequently expose themselves and masturbate in class, stare at her while pleasuring themselves, and use sexually explicit language towards her.

**ANSWER**:     Defendant denies the allegations of this paragraph.

15.     Plaintiff's students ridicule her in a demeaning and sexually suggestive form, making statements such as "she likes it," "she wants it, and "she needs it."

**ANSWER**:     Defendant denies the allegations of this paragraph.

16.     On occasion, the students have touched Plaintiff inappropriately and threatened her personal safety.

**ANSWER**:     Defendant denies the allegations of this paragraph.

17.     This behavior of the students took place on an almost daily basis while Plaintiff was assigned to Division 9.

**ANSWER**:     Defendant denies the allegations of this paragraph.

18.     Plaintiff complained of the behavior no less than 17 times during her time in Division 9.

**ANSWER**:      Defendant denies the allegations of this paragraph.

19.     Although the administration promised Plaintiff that something would be done, and that the offending students would be removed from Plaintiff's class, generally the administration's

response to Plaintiff's complaints was to remove a student from the classroom temporarily, with no consequences, and then return him to class the next day.

**ANSWER**:     Defendant denies the allegations of this paragraph.

20.     Plaintiff was promised a meeting with Principal Sims regarding student conduct, but Principal Sims failed to meet with Plaintiff.

**ANSWER**:     Defendant denies the allegations of this paragraph.

21.     The students' sexual behavior violated the Student Code of Conduct for CPS.

a.     Under the Code, such sexual conduct falls in the category of "most seriously disruptive behaviors," which includes "unwelcomed sexual conduct, indecent exposure, transmitting sexually suggestive image through information technology devices, or other sexual activities which do not involve the use of force."

b.     The Student Code of Conduct recommends numerous interventions and consequences, such as suspension or termination from the school.

c.     The Student Code of Conduct also provides for consequences and interventions for "[p]rofane, obscene, indecent, and immoral or seriously offensive language and gestures, …harassment" based on sex.

**ANSWER**:     The Board's, "Student Code of Conduct" speaks for itself and Defendant denies that Plaintiff completely, and therefore accurately, cites the Student Code of Conduct. Defendant further denies any statements inconsistent with the Student Code of Conduct. Defendant denies the remaining allegations of this paragraph, including sub-paragraphs (a) through (c).

22.     The York administration failed and refused to take the steps set forth in the Student Code of Conduct to address the behaviors, and discouraged certain disciplinary actions.

**ANSWER**:     Defendant denies the allegations of this paragraph.

23.     Additionally, the York administration disregarded their obligations to notify authorities of student disciplinary action. At relevant times, York has only reported a maximum of ten incidents to CPS each year, resulting in a false and fraudulent picture of safety and security at the school.

**ANSWER**:     Defendant denies the allegations of this paragraph.

24.     The sexual harassment and lack of support from Defendants took a devastating toll on Agbefe, who was forced to take a medical leave of absence.

**ANSWER**:     Defendant admits Plaintiff took a leave of absence during her employment with the Board, but denies that Plaintiff took a leave of absence because of any Board action or inaction. Defendant denies that Plaintiff was subjected to sexual harassment. Defendant denies that it failed to support Plaintiff during her employment. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation that the alleged conduct took a devastating toll on Plaintiff, and therefore denies the same.  Defendant denies the remaining allegations in this paragraph.

25.     During her treatment, Plaintiff also attempted to address the source of suffering, contacting the Board's compliance office, the Equal Opportunity Compliance Office ("EOCO"). No ameliorative action was taken.

**ANSWER**:     Defendant admits Plaintiff contacted the Board's compliance office, the EOCO. Defendant denies the remaining allegations of this paragraph.

26.     On or about May 17, 2018, Agbefe filed a charge of discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights complaining of discrimination based on sex and retaliation. Those charges remain pending.

**ANSWER**:     Defendant admits Plaintiff filed Charge No. 440-2018-05396 with the Equal Employment Opportunity Commission on or near May 18, 2018, and alleged discrimination based on

6

sex and retaliation. Defendant denies that it is liable for any unlawful conduct. Defendant denies the remaining allegations of this paragraph.

**OIG Investigation and Report**

27.     In the Fall of 2016, the Office of the Inspector General ("OIG") conducted an investigation into allegations of fraudulent practices at York.

**ANSWER**:     Defendant admits the OIG investigated alleged acts of "fraudulent and improper practices" at York, which was summarized in a June 30, 2017 "Executive Memo" to the Board. Defendant denies the allegation that the OIG started its investigation in the fall of 2016. Defendant further denies the remaining allegations of this paragraph.

28.     In a report dated September 12, 2017, the OIG stated that York engaged in a practice of falsely inflating enrollment and attendance data and awarding credits that were not earned. The OIG also found that multiple teachers were pressured into issuing credits to students who had not earned them.

**ANSWER**:     The Board admits the OIG issued a report (the "OIG Report") on or about September 12, 2017. The OIG Report speaks for itself and Defendant denies that Plaintiffs completely, and therefore accurately, cite the statements contained in the OIG Report. Defendant further denies any statements inconsistent with the OIG Report.

29.     The OIG report also revealed sexual improprieties at York, finding that many of the teachers interviewed were discouraged from reporting dangerous incidents at the school. These incidents included: assaults, chronic classroom masturbation, and threatening conduct by an organized faction of students who committed sexual assaults in the jail.

**ANSWER**:     The OIG Report speaks for itself and Defendant denies that Plaintiff completely, and therefore accurately, cites the statements contained in the OIG Report. Defendant further denies any statements inconsistent with the OIG Report.

30.     Based on the findings of its investigation, the OIG recommended that Principal Sims be terminated.

**ANSWER**:     Defendant admits the allegations of this paragraph.

31.     In response to the OIG report, the Board temporarily removed Principal Sims from York, and purported to conduct their own investigation, led by Deputy General Counsel James Ciesil, Caucasian, male.

**ANSWER**:     Defendant admits that Principal Sims was employed by the Board from January 3, 2000 to the present and her duties were temporarily reassigned to Network 11 after the OIG plan was released, but she resumed her principal duties at York on November 9, 2017 as announced in a CPS press release. Defendant further admits former Deputy General Counsel, James Ciesil, self-reported as a Caucasian male, and was a member of the Board's Law Department. Defendant admits Mr. Ciesil conducted an investigation, review, and analysis of the OIG investigation. Defendant denies the remaining allegations of this paragraph.

32.     Mr. Ciesil interviewed Plaintiff. In response to his questions, Plaintiff confirmed allegations that her colleagues made to the OIG.

**ANSWER**:     Defendant admits Mr. Ciesil interviewed Plaintiff and she responded to his questions as part of the Law Department's investigation, review, and analysis of the OIG investigation. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff confirmed the allegations that she and her colleagues made to the OIG. Defendant denies the remaining allegations of this paragraph.

33.     Additionally, Plaintiff confided in Mr. Ciesil that she felt unsafe at work, and that students were masturbating in the classroom and making inappropriate sexual advances.

**ANSWER**:    Defendant admits Plaintiff told Mr. Ciesil she "felt unsafe in her work environment" as was reported in Ciesil's "Memorandum," dated November 2, 2017. Defendant denies the remaining allegations of this paragraph.

34.    In candor, Plaintiff told Mr. Ciesil that she felt she had been pressured into giving an unearned credit to a student.

**ANSWER**:    Defendant admits Plaintiff told Mr. Ciesil she "felt that she was pressured but not forced to issue credits to students," as was reported in Ciesil's "Memorandum," dated November 2, 2017. Defendant denies the remaining allegations of this paragraph.

35.    Due to the nature of the report, Mr. Ciesil stated that employee names would be redacted for confidentiality. However, his "Confidential" investigative report was released to the media, in only partially redacted form. It was published by the Chicago Sun-Times and other media outlets.

**ANSWER**:    Defendant admits Mr. Ciesil prepared a "Memorandum," dated November 2, 2017. Defendant further admits Mr. Ciesil wrote in his Memorandum that the "Law Department's School Law Unit has redacted the [Memorandum] to protect the confidential information it contains." Defendant also admits parts of the Memorandum was redacted and provided to the media and subsequently published in the Chicago Sun-Times and other media outlets. Defendant denies the remaining allegations of this paragraph.

36.    The poorly redacted report disclosed Plaintiff's name explicitly, and recounted her grievances with York.

**ANSWER**:    Defendant admits Plaintiff was named in Mr. Ciesil's Memorandum. Defendant denies the Memorandum was poorly redacted. Defendant denies the remaining allegations of this paragraph.

37.     In his report, Mr. Ciesil downplayed the disciplinary problems at York, and wrote that nearly every teacher interviewed stated a "threat" by a student at York is a rare event. He concluded that many teachers stated that they had never been threatened in a manner that left them in fear for their bodily safety, or felt sexually compromised.

**ANSWER**:     Defendant admits Mr. Ciesil wrote the following in his Memorandum: "[n]early every teacher interviewed by this author stated that a 'threat' by a student at York is a rare event. Many teachers stated that they had never been 'threatened' in which they feared for their bodily safety or felt sexually compromised." Ciesil's Memorandum speaks for itself and Defendant denies that Plaintiff completely, and therefore accurately, cites statements contained in the Memorandum. Defendant further denies any statements inconsistent with the Memorandum. Defendant denies the remaining allegations of this paragraph.

38.     Mr. Ciesil also stated that experts that entered York from the Network or Central Office had never seen a student threaten anyone.

**ANSWER**:     Defendant admits that in his Memorandum, Mr. Ciesil wrote, "every educational expert that had entered York from the Network or Central Office had never seen a student 'threaten' anyone…Thus, the assertion by the OIG that 'many' York teachers complained of being threatened at York lacks a basis in fact." Defendant denies the remaining allegations of this paragraph.

39.     Mr. Ciesil singled out Plaintiff as the only person he interviewed who expressed fear for their safety while at York, portraying Plaintiff as overreacting and misrepresenting the situation.

**ANSWER**:     Defendant denies the allegations of this paragraph.

40.     In addition, Mr. Ciesil stated that there was a "racial" element to the OIG investigation, that those teachers who were critical of Principal Sims and York were disgruntled employees with performance issues, and insinuated that those teachers and staff who were critical of Principal Sims and York were biased by race.

**ANSWER**: Defendant admits that in his Memorandum, Mr. Ciesil stated there was a "racial element to the OIG's investigation" and "[t]he racial implications are also apparent." The Memorandum speaks for itself and Defendant denies that Plaintiffs completely, and therefore accurately, cite the statements contained in the Report. Defendant denies any inconsistent statements with the Report. Defendant denies the Memorandum insinuated that those teachers and staff who were critical of Principal Sims and York were biased by race. Defendant further denies the remaining allegations of this paragraph.

41.     The Board's release of the investigative report was unprecedented. The Board had never released a public report attacking an investigation by OIG.

**ANSWER**:     Defendant denies the allegations of this paragraph.

42.     After Mr. Ciesil's report was released, the Network Chief recommended that everyone read the report, vindicating Dr. Sims.

**ANSWER**:     Defendant denies the allegations of this paragraph.

43.     Rejecting the OIG's recommendation, the Board reinstated Dr. Sims, an action that was also unprecedented.

**ANSWER**:     Defendant admits that Principal Sims was employed by the Board from January 3, 2000 to the present and her duties were temporarily reassigned to Network 11 after the OIG plan was released. Defendant also admits that Principal Sims was reinstated and resumed her principal duties at York on November 9, 2017 as announced in a CPS press release. Defendant denies the remaining allegations of this paragraph.

44.     The CEO of CPS, Forrest Claypool, issued a statement thanking Principal Sims, and apologizing to her for the "blight on her reputation."

**ANSWER**:     Defendant admits that former CPS CEO, Forrest Claypool, was quoted in a CPS press release as saying, "Principal Sims is owed our thanks for her efforts at York, as well as a

sincere apology for the blight on her reputation." Defendant denies the remaining allegations of this paragraph.

45.     Plaintiff quickly felt the repercussions from the interview with Mr. Ciesil and the resulting report.

**ANSWER**:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff quickly felt the repercussions from her interview with Mr. Ciesil and the resulting report.

46.     Upon returning to work, Dr. Sims said that her family would seek vengeance against those responsible for her removal.

**ANSWER**:     Defendant denies the allegations of this paragraph.

47.     Dr. Sims was actively causing staff and her family to work against those that disclosed the improper practices at York.

**ANSWER**:     Defendant denies the allegations of this paragraph.

48.     In May of 2017, Principal Sims gave Plaintiff a false performance evaluation of "not proficient."

**ANSWER**:     Defendant denies the allegations of this paragraph.

49.     Plaintiff disagreed with the performance evaluation and filed a grievance, on which she prevailed. Nonetheless, Plaintiff's adjusted evaluation still did not reflect Plaintiff's actual performance.

**ANSWER**:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff disagreed with her performance evaluation. Defendant denies the remaining allegations of this paragraph.

50.     Having exhausted all avenues with the York administration, Plaintiff took her concerns to the Board itself. Mr. Ciesil noted that the school had security cameras and offered to place an

additional staff member in her classroom. When Plaintiff stated that those measures were insufficient, Mr. Ciesil responded that when Plaintiff chose to work at York, she clearly knew that she was signing up to work inside a jail, and that her students would be inmates charged with serious crimes.

**ANSWER**:    Defendant admits Plaintiff spoke to Board employees regarding her experience at York. Defendant also admits Mr. Ciesil emailed Plaintiff's Counsel on December 17, 2017 and said the following: "When Ms. Agbefe chose to work at York she clearly knew that she was signing up to work inside a jail and that her students would be inmates charged with serious crimes." Defendant further admits Mr. Ciesil wrote that "[t]here are cameras inside" Plaintiff's "classroom." Defendant also admits Mr. Ciesil offered to place another adult male staff member in Plaintiff's classroom. Moreover, Defendant admits that Plaintiff's Counsel said that Ciesil's proposals were "inadequate." Defendant denies that Plaintiff "exhausted all avenues" with the York administration. Defendant further denies the remaining allegations of this paragraph.

## COUNT I
## SEX DISCRIMINATION IN VIOLATION OF TITLE IX

1-50.    Plaintiff repeats and realleges paragraphs 1 through 50 above, as though fully set forth herein.

**ANSWER**:    Defendant restates its answers to paragraphs 1 through 50 as if fully set forth here.

### Unlawful Sex-Based Discrimination
### Against Employee of Federally-Funded Program

51.    Title IX of the Education Amendments of 1972, 20 U.S.C §§ 1861, et seq. ("Title XI"), prohibits employment discrimination on the basis of sex in programs receiving federal financial assistance.

**ANSWER**:     Defendant admits Title IX prohibits discrimination on the basis of sex, but denies it discriminated against Plaintiff or that it engaged in any unlawful conduct for which it may be liable.

52.     At all relevant times, the Board was receiving federal financial assistance.

**ANSWER**:     Defendant admits it receives federal financial assistance. Defendant denies the remaining allegations of this paragraph.

53.     As a teacher at York, Plaintiff participated in a program or activity that received federal financial assistance.

**ANSWER**:     Defendant denies the allegations of this paragraph.

54.     The United States Department of Education regulations implementing Title IX prohibit employment practices that discriminate on the basis of sex.

**ANSWER**:     Title IX and the regulations implemented by the United States Department of Education speak for itself. Defendant denies any statement inconsistent with Title IX and the Department of Education's regulations.

55.     In violation of 34 C.F.R. § 100.3(b)(vi), discriminating against Plaintiff on the basis of her sex, through the actions set forth above, the Board denied Plaintiff equal opportunity to participate in employment in the Chicago Public Schools. Plaintiff's employment opportunities were different from those afforded others in the Chicago Public Schools, where student discipline policies were enforced, and sexual harassment of teachers was prohibited.

**ANSWER**:     Defendant denies the allegations of this paragraph.

56. In violation of 34 C.F.R. §100.3(c)(1) and 34 C.F.R. § 100.3(c)(3), the Board unlawfully subjected Plaintiff to discrimination and retaliation, on the basis of her sex, in its educational practices at York, including through employment.

**ANSWER**:     Defendant denies the allegations of this paragraph.

**Unlawful Discrimination Based on Sex,**
**Depriving Beneficiaries of Federally-Funded Program**
**of Equality of Opportunity and Non-Discriminatory Treatment**

57.     In the alternative, by engaging in and failing to prevent ongoing sex discrimination and retaliation against Plaintiff, the Board failed to assure equality of opportunity to, and nondiscriminatory treatment of, its beneficiaries, as required by 34 C.F.R. § 100.3(c)(3).

**ANSWER**:     Defendant denies the allegations of this paragraph.

58.     In violation of 34 C.F.R. §100.3(c)(1) and 34 C.F.R. § 100.3(c)(3), through, inter alia, the actions set forth in paragraphs 1-56 above, the Board subjected Plaintiff to discrimination on the basis of sex in its educational practices at York, including through employment.

**ANSWER**:     Defendant denies the allegations of this paragraph.

59.     By failing to prevent ongoing sex discrimination and retaliation against Plaintiff, the Board failed to assure equality of opportunity to, and nondiscriminatory treatment of, the student beneficiaries of the federal funding, as required by 34 C.F.R. § 100.3(c)(3).

**ANSWER**:     Defendant denies the allegations of this paragraph.

60.     Defendants discriminated against Ms. Agbefe on the basis of her female sex, in a manner that resulted in segregation, exclusion, and other discrimination against students, in one or more of the following ways:

a.   Ms. Agbefe, female, was a member of a protected class;

b.   Ms. Agbefe's students, all of whom were male, were beneficiaries protected by Title VI against segregation, exclusion or other discrimination:

   i.   At all relevant times, most of Ms. Agbefe's students at York were members of protected racial, ethnic and national origin classes, Black and Hispanic;

   ii.   At all relevant times, most of Ms. Agbefe's students were low income, i.e., qualifying for free or reduced priced lunches;

    iii. At all relevant times, most of Ms. Agbefe's students were at high risk for academic failure;

    iv. At all relevant times, Ms. Agbefe's students were housed in maximum security detention facilities;

    v. At all relevant times, Ms. Agbefe's students were at risk for criminal convictions, longer-term incarceration, and recidivism;

c. Violating the Student Code of Conduct, Ms. Agbefe's students frequently engaged in sexual harassment and classroom violence, including taunts, sexually suggestive remarks, sexual assaults, and masturbation, in Ms. Agbefe's classroom, commonly with impunity;

d. The Student Code of Conduct applied to schools throughout the Chicago Public Schools, and compliance was mandatory, but the York administration turned a blind eye to its chronic violation in Ms. Agbefe's classroom, contradicted the applicable procedures of the Department of Corrections, and failed to provide disciplinary support;

e. The York administration regularly underreported infractions of the Student Code of Conduct, in an effort to cover up its chronic violations;

f. The York administration acquiesced in the violations of the Student Code of Conduct in Ms. Agbefe's classroom, and thus endangered the safety of Plaintiff, students, and other staff, unlike other schools in the Chicago Public School system, where the Student Code of Conduct was enforced, students' education was supported by consistent disciplinary structure, and students and faculty were afforded protection against a sexually hostile educational environment;

g. The Board held the York students to grossly lower standards of conduct than students elsewhere in the Chicago Public Schools, although the York students are at higher risk for school violence, academic failure, future criminal conduct, and recidivism;

16

h.  The York administration thereby failed to provide appropriate discipline to the at- risk students in Ms. Agbefe's classroom, treating them unequally to students elsewhere in the Chicago Public Schools, where the Student Code of Conduct was enforced;

i.  The discriminatory and retaliatory failure of the York administration to inculcate and support disciplinary standards, and enforce the Student Code of Conduct, resulted in a failure to correct antisocial behaviors, and to foster social and employment skills;

j.  The failure of the York administration to enforce the Student Code of Conduct put the students at increased risk for academic failure, criminal misconduct and recidivism;

k.  The failure of the York administration to enforce the Student Code of Conduct deprived Ms. Agbefe's students of equal education opportunities;

l.  The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom undercut her authority in the classroom, interfering with her performance and effectiveness, and impairing the quality of educational services received by the students;

m.  The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom interfered with the delivery of instruction, depriving her students of education that children elsewhere in the Chicago Public Schools received;

n.  A well-educated African-American woman and teacher of the sciences, Ms. Agbefe's value as a role model for her York students was tarnished by the willful failure of the York administration to address the misconduct;

o.  Put on clear notice of the failures of the York administration through the investigation and report of the OIG, the Board not only failed to intervene, but perpetrated a retaliatory cover-up, through the purported investigation and report of Deputy General Counsel James Ciesil;

p.  By disregarding the OIG's findings supporting Plaintiff's allegations, and retaliating against participants in the investigation, the Board deprived students of equal educational opportunity;

q.  In a report specifically naming Plaintiff Agbefe, Board Counsel James Ciesil publicly discredited Plaintiff on account of her sex, alleging that other teachers had no security concerns, and accusing her of falsehoods;

r.  In his report, Ms. Ciesil disparaged Plaintiff through a sexist stereotype, calling her "hypersensitive," and stating that Plaintiff expected—and should have expected— the sexually harassing behavior of the students when she went to teach at York;

s.  Underplaying the credible evidence of sexual harassment at York, in his report, Mr. Ciesil contended that the OIG report, and the staff members who were critical of Principal Sims and/or York, were racially motivated;

t.  Mr. Ciesil's biased findings were discriminatory and retaliatory on the basis of sex;

u.  In further disregard of the credible evidence of sexual harassment at York, the Board failed to properly investigate, or to seek compliance with system-wide standards, policies, and procedures, when the OIG reported that York's education policies, including its employment practices, had a discriminatory impact upon direct beneficiaries of the federal funds, in this case, the students themselves;

v.  Defendants denied Plaintiff full access to employment opportunities;

w.  The Board refused Plaintiff's requests for a reassignment to a different division, despite her fear for her personal safety;

x.  Defendant Board issued a negative and false performance evaluation to Plaintiff, thus limiting her opportunities for continued employment in the Chicago Public Schools, and for employment elsewhere;

y.   Similarly-situated male individuals employed by the Chicago Public Schools were treated more favorably than Plaintiff; and

z.   The Board's employment discrimination and retaliation infected its students' entitlement to services, programs, and activities, failing to address the urgent educational needs of this highly at-risk student population.

**ANSWER**:   Defendant denies that it discriminated or retaliated against Plaintiff, and/or engaged in any unlawful conduct for which it would be liable. Defendant denies the remaining allegations of this paragraph, including sub-paragraphs (a) through (z).

61.   The Board had knowledge that Plaintiff was being subjected to sex discrimination and harassment on a routine basis.

**ANSWER**:   Defendant denies Plaintiff was subjected to sex discrimination and therefore denies the remaining allegations of this paragraph.

62.   As matters escalated, Plaintiff complained that such actions were affecting her mental and physical well-being, but her pleas for corrective action were ignored.

**ANSWER**:   Defendant admits Plaintiff filed an internal complaint of discrimination and sexual harassment with the Board's EOCO and in her complaint she alleged that her "overall health has declined." Defendant denies the remaining allegations of this paragraph.

63.   Through the actions set forth above, Defendants denied Plaintiff equal access to employment opportunities.

**ANSWER**:   Defendant denies the allegations of this paragraph.

64.   The Board refused to protect Ms. Agbefe against discrimination and harassment, denying leave/accommodation, issuing false evaluations, and releasing and publishing a report with her confidential statements unredacted.

**ANSWER**:   Defendant denies the allegations of this paragraph.

65.     Plaintiff met the Board's legitimate employment expectations, yet they treated her less favorably than similarly-situated male employees.

**ANSWER**:     Defendant denies the allegations of this paragraph.

66.     Plaintiff suffered, and continues to suffer, irreparable injury, for which Plaintiff has no adequate remedy at law.

**ANSWER**:     Defendant denies the allegations of this paragraph.

67.     As a direct and proximate result of the Board's knowing and intentional actions, Plaintiff has suffered lost wages, direct physical and emotional injury, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

**ANSWER**:     Defendant denies the allegations of this paragraph.

68.     Defendants' actions were knowing, intentional, willful, and wanton. The Board discriminated against Plaintiff with malice and/or reckless indifference to her federally protected rights.

**ANSWER**:     Defendant denies the allegations of this paragraph.

69.     But for Plaintiff's female sex, the Board would not have subjected her to the adverse employment actions.

**ANSWER**:     Defendant denies the allegations of this paragraph.

70.     As a direct and proximate result of the Board's retaliatory actions, Plaintiff has suffered lost wages, direct physical injury, emotional distress, loss of reputation, compensatory damages, and has incurred attorney's fees and cost

**ANSWER**:     Defendant denies the allegations of this paragraph.

**WHEREFORE, Defendant denies that Plaintiff is entitled to any relief whatsoever, and pray this Honorable Court enter judgment in its favor and award the costs of defending this lawsuit, and any other relief the Court deems just.**

**COUNT II**
**RETALIATION IN VIOLATION OF TITLE IX**

1-70. Plaintiff repeats and realleges paragraphs 1 through 70 above as though fully set forth herein.

**ANSWER**: Defendant restates its answers to paragraphs 1 through 70 as if fully set forth here.

**Unlawful Sex-Based Retaliation**
**Against Employee of Federally-Funded Program**

71. Title IX of the Education Amendments of 1972, 20 U.S.C §§ 1861, et seq. ("Title IX"), prohibits employment discrimination on the basis of sex, including retaliation, in programs receiving federal financial assistance.

**ANSWER**: Defendant admits Title IX prohibits discrimination and retaliation on the basis of sex, but denies it discriminated or retaliated against Plaintiff or that it engaged in any unlawful conduct for which it may be liable. Defendant also admits Title IX protects some individuals who suffer retaliation after reporting instances of sex discrimination. Defendant denies the remaining allegations of this paragraph.

72. At all relevant times, the Board was receiving federal financial assistance.

**ANSWER**: Defendant admits it receives federal financial assistance. Defendant denies the remaining allegations of this paragraph.

73. As a teacher at York, Plaintiff participated in a program or activity that received federal financial assistance.

**ANSWER**: Defendant denies the allegations of this paragraph.

74. The United States Department of Education regulations implementing Title IX prohibit employment practices that discriminate on the basis of sex, including through retaliation.

**ANSWER**:    Title IX and the regulations implemented by the United States Department of Education speak for itself. Defendant denies any statement inconsistent with Title IX and the Department of Education's regulations.

75.    In violation of 34 C.F.R. § 100.3(b)(vi), retaliating against Plaintiff on the basis of her sex, through the actions set forth above, the Board denied Plaintiff equal opportunity to participate in employment in the Chicago Public Schools. Plaintiff's employment opportunities were different from those afforded others in the Chicago Public Schools, where student discipline policies were enforced, and sexual harassment of teachers was prohibited.

**ANSWER**:    Defendant denies the allegations of this paragraph.

76. In violation of 34 C.F.R. §100.3(c)(1) and 34 C.F.R. § 100.3(c)(3), the Board unlawfully subjected Plaintiff to discrimination and retaliation, on the basis of her sex, in its educational practices at York, including through employment.

**ANSWER**:    Defendant denies the allegations of this paragraph.

### Unlawful Retaliation Based on Sex, Depriving Beneficiaries of Federally-Funded Program Of Equality of Opportunity and Non-Discriminatory Treatment

77.    In the alternative, by engaging in and failing to prevent ongoing sex discrimination and retaliation against Plaintiff, the Board failed to assure equality of opportunity to, and nondiscriminatory treatment of, its beneficiaries, as required by 34 C.F.R. § 100.3(c)(3).

**ANSWER**:    Defendant denies the allegations of this paragraph.

78.    In violation of 34 C.F.R. §100.3(c)(1) and 34 C.F.R. § 100.3(c)(3), through, inter alia, the actions set forth in paragraphs 1-77 above, the Board subjected Plaintiff to retaliation on the basis of sex in its educational practices at York, including through employment.

**ANSWER**:    Defendant denies the allegations of this paragraph.

79.     By failing to prevent ongoing sex discrimination and retaliation against Plaintiff, the Board failed to assure equality of opportunity to, and nondiscriminatory treatment of, the student beneficiaries of the federal funding, as required by 34 C.F.R. § 100.3(c)(3).

**ANSWER**:     Defendant denies the allegations of this paragraph.

80.     Defendants retaliated against Ms. Agbefe on the basis of her female sex, in a manner that resulted in segregation, exclusion and other discrimination against students, in one or more of the following ways:

a.  Ms. Agbefe's students, all of whom were male, were beneficiaries protected by Title VI against segregation, exclusion or other discrimination:

b.  At all relevant times, most of Ms. Agbefe's students at York were members of protected racial, ethnic and national origin classes, Black and Hispanic; were low income; and were at high risk for academic failure;

c.  At all relevant times, Ms. Agbefe's students were housed in maximum security detention facilities;

d.  At all relevant times, Ms. Agbefe's students were at risk for criminal convictions, longer-term incarceration, and recidivism;

e.  Violating the Student Code of Conduct, Ms. Agbefe's students frequently engaged in sexual harassment and classroom violence, including taunts, sexually suggestive remarks, sexual assaults, and masturbation, in Ms. Agbefe's classroom, commonly with impunity;

f.  The Student Code of Conduct applied to schools throughout the Chicago Public Schools, and compliance was mandatory, but the York administration turned a blind eye to its chronic violation in Ms. Agbefe's classroom, contradicted the applicable procedures of the Department of Corrections, and failed to provide disciplinary support;

g. The York administration regularly underreported infractions of the Student Code of Conduct, in an effort to cover up its chronic violations;

h. The York administration acquiesced in the violations of the Student Code of Conduct in Ms. Agbefe's classroom, and thus endangered the safety of Plaintiff, students, and other staff, unlike other schools in the Chicago Public School system, where the Student Code of Conduct was enforced, students' education was supported by consistent disciplinary structure, and students and faculty were afforded protection against a sexually hostile educational environment;

i. The Board held the York students to grossly lower standards of conduct than students elsewhere in the Chicago Public Schools, although the York students are at higher risk for school violence, academic failure, future criminal conduct, and recidivism;

j. The York administration thereby failed to provide appropriate discipline to the at-risk students in Ms. Agbefe's classroom, treating them unequally to students elsewhere in the Chicago Public Schools, where the Student Code of Conduct was enforced;

k. The discriminatory and retaliatory failure of the York administration to inculcate and support disciplinary standards, and enforce the Student Code of Conduct, resulted in a failure to correct antisocial behaviors, and to foster social and employment skills;

l. The failure of the York administration to enforce the Student Code of Conduct put the students at increased risk for academic failure, criminal misconduct and recidivism;

m. The failure of the York administration to enforce the Student Code of Conduct deprived Ms. Agbefe's students of equal education opportunities;

n. The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom undercut her authority in the classroom, interfering with her

performance and effectiveness, and impairing the quality of educational services received by the students;

o. The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom interfered with the delivery of instruction, depriving her students of education that children elsewhere in the Chicago Public Schools received;

p. A well-educated African-American woman and teacher of the sciences, Ms. Agbefe's value as a role model for her York students was tarnished by the willful failure of the York administration to address the misconduct;

q. Put on clear notice of the failures of the York administration through the investigation and report of the OIG, the Board not only failed to intervene, but perpetrated a retaliatory cover-up, through the purported investigation and report of Deputy General Counsel James Ciesil;

r. By disregarding the OIG's findings supporting Plaintiff's allegations, and retaliating against participants in the investigation, the Board deprived students of equal educational opportunity;

s. In a report specifically naming Plaintiff Agbefe, Board Counsel James Ciesil publicly discredited Plaintiff on account of her sex, alleging that other teachers had no security concerns, and accusing her of falsehoods;

t. In his report, Ms. Ciesil disparaged Plaintiff through sexist stereotyping, calling her "hypersensitive," and stating that Plaintiff expected—and should have expected—the sexually harassing behavior of the students when she went to teach at York;

u. Underplaying the credible evidence of sexual harassment at York, in his report, Mr. Ciesil retaliated by claiming that the OIG report, and the staff members who were critical of

Principal Sims and/or York, were racially motivated, thus depriving York students of corrective measures to remedy their unequal treatment;

v. Defendants' denial of Plaintiff's full access to employment opportunities deprived York students of a well-qualified teacher and role model; and

w. The Board's employment discrimination and retaliation infected its students' entitlement to services, programs, and activities, failing to address the urgent educational needs of this highly at-risk student population.

**ANSWER**: Defendant denies that it discriminated or retaliated against Plaintiff, and/or engaged in any unlawful conduct for which it would be liable. Defendant denies the remaining allegations of this paragraph, including sub-paragraphs (a) through (w).

81. Plaintiff suffered, and continues to suffer, irreparable injury, for which Plaintiff has no adequate remedy at law.

**ANSWER**: Defendant denies the allegations of this paragraph.

82. As a direct and proximate result of the Board's knowing and intentional actions, Plaintiff has suffered lost wages, direct physical and emotional injury, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

**ANSWER**: Defendant denies the allegations of this paragraph.

83. Defendants' actions were knowing, intentional, wilful, and wanton. The Board discriminated against Plaintiff with malice and/or reckless indifference to her federally protected rights.

**ANSWER**: Defendant denies the allegations of this paragraph.

84. But for Plaintiff's female sex, the Board would not have subjected her to the adverse employment actions, including discrimination and retaliation.

**ANSWER**: Defendant denies the allegations of this paragraph.

85. As a direct and proximate result of the Board's retaliatory actions, Plaintiff has suffered lost wages, direct physical injury, emotional distress, loss of reputation, compensatory damages, and has incurred attorney's fees and cost.

**ANSWER**: Defendant denies the allegations of this paragraph.

**WHEREFORE, Defendant denies that Plaintiff is entitled to any relief whatsoever, and prays this Honorable Court enter judgment in its favor and award the costs of defending this lawsuit, and any other relief the Court deems just.**

### COUNT III
### RACE DISCRIMINATION IN VIOLATION OF TITLE VI

1-85. Plaintiff repeats and realleges paragraphs 1 through 85 above as though fully set forth herein.

**ANSWER**: Defendant restates its answers to paragraphs 1 through 85 as if fully set forth here.

86. Title VI of the Civil Rights Act of 1964, 42 U.S.C § 2000d, et seq. ("Title VI"),

**ANSWER**: Defendant admits that Title VI is a federal statute enacted by congress, but denies that it violated the Act or any other statute or common law.

87. [sic] prohibits race discrimination against people participating in or benefiting from any program or activity receiving Federal financial assistance. 42 U.S.C. § 2000d.

**ANSWER**: Defendant admits Title VI prohibits race discrimination, but denies it discriminated against Plaintiff or that it engaged in any unlawful conduct for which it may be liable. Defendant denies the remaining allegations of this paragraph.

88. At all material times, the Board was receiving federal funding, as contemplated by Title VI.

**ANSWER**: Defendant admits it receives federal financial assistance. Defendant denies the remaining allegations of this paragraph.

89.     As a teacher at York, Plaintiff participated in a program or activity that received Federal assistance.

**ANSWER**:     Defendant denies the allegations of this paragraph.

90.     A purpose of the federal funding is to provide instruction to CPS students, through financial support for, inter alia, employment of faculty.

**ANSWER**:     Defendant denies the allegations of this paragraph.

91.     In violation of 34 C.F.R. § 100.3(b)(vi), the Board denied Plaintiff equal opportunity to participate in the educational program at York as an employee. Plaintiff's opportunities were different from those afforded others under the program.

**ANSWER**:     Defendant denies the allegations of this paragraph.

92.     In the alternative, "where a primary objective of Federal financial assistance is not to provide employment, but discrimination on the ground of race, color, or national origin in the employment practices of the recipient or other persons subject to the regulation tends, on the ground of race, color, or national origin, to exclude individuals from participation in, to deny them the benefits of, or to subject them to discrimination under any program to which this regulation applies, the foregoing provisions of this paragraph (c) shall apply to the employment practices of the recipient …, to the extent necessary to assure equality of opportunity to, and nondiscriminatory treatment of, beneficiaries. 34 C.F.R. §100(c)(3). Moreover, "Recipients may not engage in any employment practice that discriminates on the basis of race, color, or national origin if such discrimination tends to result in segregation, exclusion or other discrimination against students." 34 C.F.R. 100 App. B § VIII.A

**ANSWER**:     Title VI speaks for itself and Defendant denies that Plaintiff completely, and therefore accurately, cites Title VI. Defendant further denies any statements inconsistent with Title VI. Defendant denies the remaining allegations of this paragraph.

93.      In violation of 34 C.F.R. §100.3(c)(1) and 34 C.F.R. § 100.3(c)(3), through, inter alia, the actions set forth in paragraphs 95-99 below, the Board subjected Plaintiff to discrimination on the ground of race in its educational practices at York, including through employment.

**ANSWER**:      Defendant denies the allegations of this paragraph.

94.      By failing to prevent ongoing race discrimination and retaliation against Plaintiff, the Board did not assure equality of opportunity to, and nondiscriminatory treatment of, its beneficiaries, as required by 34 C.F.R. § 100.3(c)(3).

**ANSWER**:      Defendant denies the allegations of this paragraph.

95.      Defendants discriminated against Ms. Agbefe on the basis of her race, African-American, in a manner that resulted in segregation, exclusion, and other discrimination against students, in one or more of the following ways:

   a.   Ms. Agbefe, Black, was a member of a protected class;

   b.   Ms. Agbefe's students were beneficiaries protected by Title VI against segregation, exclusion, or other discrimination;

   c.   At all relevant times, virtually all of Ms. Agbefe's students at York were members of protected racial classes, predominately Black with a substantial number of Hispanic students;

   d.   At all relevant times, most all of Ms. Agbefe's students were low income, i.e., qualifying for free or reduced priced lunches;

   e.   At all relevant times, virtually all of Ms. Agbefe's students were at high risk for academic failure;

   f.   At all relevant times, Ms. Agbefe's students were housed in maximum security pretrial detention facilities;

g. At all relevant times, virtually all of Ms. Agbefe's students were at risk for criminal convictions, longer-term incarceration, and recidivism;

h. All of Ms. Agbefe's students were male;

i. Ms. Agbefe's students frequently engaged in sexual harassment and classroom violence, including taunts, sexually suggestive remarks, sexual assaults, and masturbation, in Ms. Agbefe's classroom;

j. Such sexual harassment and violence violated the provisions of the Student Code of Conduct, thus endangering the safety of Plaintiff, students, and other staff;

k. The Student Code of Conduct was applied and enforced throughout the Chicago Public Schools;

l. Although the Student Code of Conduct applied to the students at York, the York administration turned a blind eye to its chronic violation in Ms. Agbefe's classroom, and failed to provide disciplinary support;

m. The York administration regularly underreported infractions of the Student Code of Conduct, in an effort to cover up its chronic violations;

n. The York administration acquiesced in the flagrant sexual harassment in Ms. Agbefe's classroom, unlike other schools in the Chicago Public School system;

o. In other CPS schools where the Student Code of Conduct was enforced, students' education was supported by uniform disciplinary structure, and students and faculty were afforded protection against a sexually hostile educational environment;

p. The failure of the York administration to inculcate and support disciplinary standards, and enforce the Student Code of Conduct, resulted in a failure to correct antisocial behaviors, and develop social and employment skills;

q.  The failure of the York administration to enforce the Student Code of Conduct put the students at increased risk for academic failure, criminal misconduct and recidivism;

r.  The failure of the York administration to enforce the Student Code of Conduct deprived Ms. Agbefe's students of equal education opportunities;

s.  The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom undercut her authority in the classroom, interfering with her performance and effectiveness, and impairing the quality of educational services received by the students;

t.  The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom interfered with the delivery of instruction, depriving her students of education that children elsewhere in the Chicago Public Schools received;

u.  A well-educated African-American woman and teacher of the sciences, Ms. Agbefe's value as a role model for her York students was tarnished by the willful failure of the York administration to address the misconduct;

v.  Put on clear notice of the failures of the York administration through the investigation and report of the OIG, the Board not only failed to intervene, but engaged in a cover-up, through the purported investigation and report of Deputy General Counsel James Ciesil;

w.  The Board holds the York students to grossly lower standards of conduct than students elsewhere in CPS, although the York students are at higher risk for school violence, academic failure, future criminal conduct, and recidivism;

x.  By participating in the OIG investigation, Plaintiff was advocating on behalf of her students, who were primarily African-American or Hispanic;

y.  In a report specifically naming Plaintiff Agbefe, Board Counsel James Ciesil, who is Caucasian, publicly discredited Plaintiff on account of her race, by alleging that she was the only African-American teacher with security concerns, and accusing her of falsehoods;

z.  James Ciesil disparaged Plaintiff by calling her "hypersensitive," and stating that Plaintiff expected—and should have expected—the sexually harassing behavior of the students when she went to teach at York;

aa. Ciesil's false and negative findings were racially discriminatory;

bb. The Board failed to properly investigate, or to seek compliance with system-wide standards, policies, and procedures, when the OIG reported that York's education policies, including its employment practices, had a discriminatory impact upon direct beneficiaries of the federal funds, in this case, the students themselves;

cc. By disregarding the OIG's findings supporting Plaintiff's allegations, the Board deprived students of equal educational opportunity;

dd. The Board's employment discrimination infects its students' entitlement to services, programs, and activities to address the urgent educational needs of this highly at-risk student population;

ee. Defendants denied Plaintiff full access to employment opportunities;

ff.  The Board refused Plaintiff's requests for a reassignment to a different division, despite her fear for her personal safety;

gg. Defendant Board issued a negative and false performance evaluation to Plaintiff; and

hh. Similarly-situated individuals of a different race employed by the Chicago Public Schools were treated more favorably than Plaintiff.

**ANSWER**:    Defendant denies that it discriminated or retaliated against Plaintiff, and/or engaged in any unlawful conduct for which it would be liable. Defendant denies the remaining allegations of this paragraph, including sub-paragraphs (a) through (hh).

96.    The Board was aware that Plaintiff was being subjected to discrimination and harassment on a routine basis. As matters escalated, Plaintiff complained that such actions were affecting her mental and physical well-being, but her pleas for corrective action were ignored.

**ANSWER**:    Defendant admits Plaintiff filed an internal complaint of discrimination and sexual harassment with the Board's EOCO and in her complaint she alleged that her "overall health has declined." Defendant denies that Plaintiff was subjected to discrimination or harassment and therefore denies that it had knowledge of any discrimination or harassment. Defendant denies that Plaintiff's pleas for corrective action were ignored. Defendant denies the remaining allegations of this paragraph.

97.    Plaintiff suffered, and continues to suffer, irreparable injury.

**ANSWER**:    Defendant denies the allegations of this paragraph.

98.    Plaintiff has no adequate remedy at law.

**ANSWER**:    Defendant denies the allegations of this paragraph.

99.    As a direct and proximate result of the Board's discriminatory actions, Plaintiff has suffered lost wages, direct physical and emotional injury, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

**ANSWER**:    Defendant denies the allegations of this paragraph.

**WHEREFORE, Defendant denies that Plaintiff is entitled to any relief whatsoever, and prays this Honorable Court enter judgment in its favor and award the costs of defending this lawsuit, and any other relief the Court deems just.**

**COUNT IV**
**RETALIATION IN VIOLATION OF TITLE VI**

1-99. Plaintiff repeats and realleges paragraphs 1 through 99 above as though fully set forth herein.

**ANSWER**: Defendant restates its answers to paragraphs 1 through 99 as if fully set forth here.

**Unlawful Race-Based Retaliation**
**Against Employee Of Federally-Funded Program**

100. Title VI of the Civil Rights Act of 1964, 42 U.S.C §§ 2000d, et seq. ("Title VI"), prohibits race discrimination against people participating in or benefiting from any program or activity receiving federal financial assistance. 42 U.S.C. § 2000d. Retaliation based on race is a type of race discrimination prohibited by Title VI.

**ANSWER**: Defendant admits Title IX prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance. Defendant denies that it discriminated or retaliated against Plaintiff, and/or engaged in any unlawful conduct for which it would be liable. Defendant denies the remaining allegations of this paragraph.

101. At all material times, the Board was receiving federal funding.

**ANSWER**: Defendant admits it receives federal financial assistance. Defendant denies the remaining allegations of this paragraph.

102. As a teacher at York, Plaintiff participated in a program or activity that received federal assistance.

**ANSWER**: Defendant denies the allegations of this paragraph.

103. The United States Department of Education regulations implementing Title VI prohibit employment practices that are racially discriminatory, including retaliation based on race.

34

**ANSWER**:      Title VI and the regulations implemented by the United States Department of Education speaks for itself. Defendant denies any statement inconsistent with Title VI and the Department of Education's regulations. Defendant denies the remaining allegations of this paragraph.

104.      In violation of 34 C.F.R. § 100.3(b)(vi), in retaliation against Plaintiff's advocacy against harmful educational practices regarding the dangerous condition of her classroom, the Board denied Plaintiff equal opportunity to participate in employment in the Chicago Public Schools. Plaintiff's employment opportunities were different from those afforded others in the Chicago Public Schools.

**ANSWER**:      Defendant denies the allegations of this paragraph.

105.      In violation of 34 C.F.R. §100.3(c)(1) and 34 C.F.R. § 100.3(c)(3), the Board subjected Plaintiff to discrimination and retaliation, on the basis of her race, in its educational practices at York, including through employment.

**ANSWER**:      Defendant denies the allegations of this paragraph.

106.      In the alternative, by failing to prevent ongoing race discrimination and retaliation against Plaintiff, the Board did not assure equality of opportunity to, and nondiscriminatory treatment of, its beneficiaries, as required by 34 C.F.R. § 100.3(c)(3).

**ANSWER**:      Defendant denies the allegations of this paragraph.

107.      In violation of 34 C.F.R. §100.3(c)(1) and 34 C.F.R. § 100.3(c)(3), through, inter alia, the actions set forth above, the Board subjected Plaintiff to retaliation on the basis of race in its educational practices at York, including through employment.

**ANSWER**:      Defendant denies the allegations of this paragraph.

### Unlawful Retaliation Based On Race,
### Depriving Beneficiaries Of Federally Funded Program
### Of Equality of Opportunity and Non-Discriminatory Treatment

108.     By failing to prevent ongoing race discrimination and retaliation against Plaintiff, the Board failed to assure equality of opportunity to, and nondiscriminatory treatment of, the student beneficiaries of the federal funding, as required by 34 C.F.R. § 100.3(c)(3).

**ANSWER**:     Defendant denies the allegations of this paragraph.

109.     In violation of 34 C.F.R. § 103.3 (c ) (1) and (c)(3), through, inter alia, the actions set forth above, the Board subjected Plaintiff to retaliation on the basis of race in its educational practices at York, including through employment.

**ANSWER**:     Defendant denies the allegations of this paragraph.

110.     Defendants retaliated against Ms. Agbefe on the basis of her race, African- American, in a manner that resulted in segregation, exclusion and other discrimination against students, in one or more of the following ways:

a.   Ms. Agbefe, Black, was a member of a protected class;

b.   Ms. Agbefe's students were beneficiaries protected by Title VI against segregation, exclusion or other discrimination:

i.   At all relevant times, Ms. Agbefe's students at York were primarily members of protected racial, ethnic and national origin classes, Black and Hispanic;

ii.   At all relevant times, most of Ms. Agbefe's students were low income, i.e., qualifying for free or reduced priced lunches;

iii.   At all relevant times, most of Ms. Agbefe's students were at high risk for academic failure;

iv.   At all relevant times, Ms. Agbefe's students were housed in maximum security detention facilities;

v. At all relevant times, Ms. Agbefe's students were at risk for criminal convictions, longer-term incarceration, and recidivism;

c. All of Ms. Agbefe's students were male;

d. Violating the Student Code of Conduct, Ms. Agbefe's students frequently engaged in sexual harassment and classroom violence, including taunts, sexually suggestive remarks, sexual assaults, and masturbation, in Ms. Agbefe's classroom, commonly with impunity;

e. The Student Code of Conduct applied to schools throughout the Chicago Public Schools, and compliance was mandatory;

f. Although the Student Code of Conduct applied to the students at York, the York administration turned a blind eye to its chronic violation in Ms. Agbefe's classroom, contradicted the applicable procedures of the Department of Corrections, and failed to provide disciplinary support;

g. The York administration regularly underreported infractions of the Student Code of Conduct, in an effort to cover up its chronic violations;

h. In retaliation against Ms. Agbefe's reports of chronic misconduct and flagrant sexual harassment in her classroom, the York administration acquiesced in the violations of the Student Code of Conduct, and thus endangered the safety of Plaintiff, students, and other staff, unlike other schools in the Chicago Public School system, where the Student Code of Conduct was enforced, students' education was supported by uniform disciplinary structure, and students and faculty were afforded protection against a sexually hostile educational environment;

i. The Board held the York students to grossly lower standards of conduct than students elsewhere in the Chicago Public Schools, although the York students are at higher risk for school violence, academic failure, future criminal conduct, and recidivism;

j.  The York administration thereby failed to provide appropriate discipline to the at-risk students in Ms. Agbefe's classroom, treating them unequally to students elsewhere in the Chicago Public Schools, where the Student Code of Conduct was enforced;

k.  The discriminatory and retaliatory failure of the York administration to inculcate and support disciplinary standards, and enforce the Student Code of Conduct, resulted in a failure to correct antisocial behaviors, and to foster social and employment skills;

l.  The failure of the York administration to enforce the Student Code of Conduct put the students at increased risk for academic failure, criminal misconduct and recidivism;

m.  The failure of the York administration to enforce the Student Code of Conduct deprived Ms. Agbefe's student of equal education opportunities;

n.  The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom undercut her authority in the classroom, interfering with her performance and effectiveness, and impairing the quality of educational services received by the students;

o.  The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom interfered with the delivery of instruction, depriving her students of education that children elsewhere in the Chicago Public Schools received;

p.  A well-educated African-American woman and teacher of the sciences, Ms. Agbefe's value as a role model for her York students was tarnished by the willful failure of the York administration to address the misconduct;

q.  Put on clear notice of the failures of the York administration through the investigation and report of the OIG, the Board not only failed to intervene, but perpetrated a retaliatory cover-up, through the purported investigation and report of Deputy General Counsel James Ciesil;

r. By disregarding the OIG's findings supporting Plaintiff's allegations, and retaliating against participants in the investigation, the Board deprived students of equal educational opportunity;

s. Mr. Ciesil's characterization of the evidence and disparagement of those teachers, including Ms. Agbefe, who had participated in the OIG investigation, were calculated to retaliate against Plaintiff and her colleagues for participating in the OIG investigation, where Ms. Agbefe was advocating on behalf of her students, who were primarily African-American or Hispanic;

t. In a report specifically naming Plaintiff Agbefe, Board Counsel James Ciesil, who is Caucasian, publicly discredited Plaintiff on account of her race, alleging that she was the only African-American teacher with security concerns, and accusing her of falsehoods;

u. James Ciesil disparaged Plaintiff by calling her "hypersensitive," and stating that Plaintiff expected—and should have expected—the sexually harassing behavior of the students when she went to teach at York;

v. Ciesil stated in his report that the OIG report, and the staff members who were critical of Principal Sims and/or York, were racially motivated;

w. Ciesil's false and negative findings were racially discriminatory and retaliatory;

x. In retaliation against the faculty, including Ms. Agbefe, who participated in the OIG investigation, the Board failed to properly investigate, or to seek compliance with system-wide standards, policies, and procedures, when the OIG reported that York's education policies, including its employment practices, had a discriminatory impact upon direct beneficiaries of the federal funds, in this case, the students themselves;

y. Defendants denied Plaintiff full access to employment opportunities;

z.   The Board refused Plaintiff's requests for a reassignment to a different division, despite her fear for her personal safety;

aa.  Defendant Board issued a negative and false performance evaluation to Plaintiff, thus limiting her opportunities for continued employment and for employment elsewhere in the Chicago Public Schools; and

bb.  Similarly-situated individuals of a different race, ethnicity, or national origin,, employed by the Chicago Public Schools, were treated more favorably than Plaintiff.

cc.  The Board's employment discrimination and retaliation infected its students' entitlement to services, programs, and activities to address the urgent educational needs of this highly at-risk student population;

**<u>ANSWER</u>**:   Defendant denies that it discriminated or retaliated against Plaintiff, and/or engaged in any unlawful conduct for which it would be liable. Defendant denies the remaining allegations of this paragraph, including sub-paragraphs (a) through (cc).

111.   The Board knew that Plaintiff was being subjected to discrimination and harassment on a routine basis. As matters escalated, Plaintiff complained that such actions were affecting her mental and physical well-being, but her pleas for corrective action were ignored.

a.   Defendants denied Plaintiff full access to employment opportunities;

b.   The Board refused Plaintiff's requests for a reassignment to a different division, despite her fear for her personal safety;

c.   Plaintiff quickly felt the repercussions from the interview with Mr. Ciesil and the resulting report;

d.   Upon returning to work, Dr. Sims said that her family would seek vengeance against those responsible for her removal;

e.   Dr. Sims issued a negative and false performance evaluation to Plaintiff;

f. Similarly-situated individuals of a different race were treated more favorably than Plaintiff.

**ANSWER**: Defendant admits Plaintiff filed an internal complaint of discrimination and sexual harassment with the Board's EOCO and in her complaint she alleged that her "overall health has declined." Defendant denies that Plaintiff was subjected to discrimination or harassment and therefore denies that it had knowledge of any discrimination or harassment. Defendant denies that Plaintiff's pleas for corrective action were ignored. Defendant denies the remaining allegations of this paragraph, including sub-paragraphs (a) through (f).

112. Plaintiff suffered, and continues to suffer, irreparable injury.

**ANSWER**: Defendant denies the allegations of this paragraph.

113. Plaintiff has no adequate remedy at law.

**ANSWER**: Defendant denies the allegations of this paragraph.

114. As a direct and proximate result of the Board's retaliatory actions, Plaintiff has suffered lost wages, direct physical and emotional injury, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

**ANSWER**: Defendant denies the allegations of this paragraph.

115. The Board was aware that Plaintiff was being subjected to discrimination and harassment on a routine basis. As matters escalated, Plaintiff explained that such actions were affecting her mental and physical well-being, but her pleas for corrective action were ignored.

**ANSWER**: Defendant admits Plaintiff filed an internal complaint of discrimination and sexual harassment with the Board's EOCO and in her complaint she alleged that her "overall health has declined." Defendant denies that Plaintiff was subjected to discrimination or harassment and therefore denies that it had knowledge of any discrimination or harassment. Defendant denies that Plaintiff's pleas for corrective action were ignored. Defendant denies the remaining allegations of this paragraph.

116.     In response to this protected activity, the Board retaliated against Plaintiff by refusing to protect her against discrimination and harassment, denying leave/accommodation, issuing false evaluations, and releasing and publishing a report with her statements unredacted.

**ANSWER**:     Defendant denies the allegations of this paragraph.

117.     The Board retaliated against Plaintiff with malice and/or reckless indifference to her federally protected rights.

**ANSWER**:     Defendant denies the allegations of this paragraph.

118.     Plaintiff met the Board's legitimate employment expectations, yet they treated her less favorably than similarly situated employees who did not engage in statutorily protected activity.

**ANSWER**:     Defendant denies the allegations of this paragraph.

119.     The nondiscriminatory reasons offered by the Defendants for the adverse action are false and pretextual.

**ANSWER**:     Defendant denies the allegations of this paragraph.

120.     But for Plaintiff's race and protected activities, the Board would not have subjected her to the adverse employment actions.

**ANSWER**:     Defendant denies the allegations of this paragraph.

121.     As a direct and proximate result of the Board's retaliatory actions, Plaintiff has suffered lost wages, emotional distress, direct physical injury, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

**ANSWER**:     Defendant denies the allegations of this paragraph.

**WHEREFORE, Defendant denies that Plaintiff is entitled to any relief whatsoever, and prays this Honorable Court enter judgment in its favor and award the costs of defending this lawsuit, and any other relief the Court deems just.**

<u>**COUNT V VIOLATION OF 42 U.S.C. § 1983**</u>
<u>**DEPRIVATION OF EQUAL PROTECTION**</u>

1-121. Plaintiff Smith repeats and realleges paragraphs 1 through 121 above as though fully set forth herein.

**<u>ANSWER</u>**:  Defendant restates its answers to paragraphs 1 through 121 as if fully set forth here.

122.    At all times relevant herein, Defendant Board and its officers were acting under color of state law.

**<u>ANSWER</u>**:    Defendant denies the allegations of this paragraph.

123.    The Board deprived Plaintiff of her right to Equal Protection of the laws by failing to investigate Plaintiff's complaints of sexual harassment and hostile work environment, failing to appropriately discipline students and maintain order in the classroom, covering up and/or failing to report student behavioral issues, and manifesting deliberate indifference to the on-going harassment of Plaintiff and other female employees.

**<u>ANSWER</u>**:    Defendant denies the allegations of this paragraph.

124.    The Board has unconstitutional policies or customs of failing to report sexually-motivated misbehavior of the students, failing to investigate the misconduct of the students at York, failing to adequately train and supervise School District employees with regard to maintaining, preserving, and protecting teachers and staff from violations of their rights to a harassment-free workplace, personal security, bodily integrity, and equal protection of the laws.

**<u>ANSWER</u>**:    Defendant denies the allegations of this paragraph.

125.    On information and belief, the School District has followed these unconstitutional customs and policies not only with regards to Plaintiff, but also with regard to criminal and/or tortious misconduct committed against other school district employees.

**<u>ANSWER</u>**:    Defendant denies the allegations of this paragraph.

43

126.     The School District's policies and/or practices constitute disparate treatment of females and had a disparate impact against female employees.

**ANSWER**:     Defendant denies the allegations of this paragraph.

127.     As a proximate result of the Defendant's actions, Agbefe has suffered lost wages and/or benefits, emotional distress, damage to her reputation, compensatory damages, and has incurred attorney's fees and costs.

**ANSWER**:     Defendant denies the allegations of this paragraph.

**WHEREFORE, Defendant denies that Plaintiff is entitled to any relief whatsoever, and prays this Honorable Court enter judgment in its favor and award the costs of defending this lawsuit, and any other relief the Court deems just.**

### JURY DEMAND

The Defendant Board of Education of the City of Chicago demands a trial by jury on all issues raised in the foregoing complaint.

Dated: July 28, 2021                    Respectfully submitted,

**DEFENDANT BOARD OF EDUCATION OF THE CITY OF CHICAGO**

JOSEPH MORIARTY, General Counsel

By:     /s/ Rashad A. Simmons
        Rashad A. Simmons, Atty No. 6319497

Lindsey Goldberg / legoldberg@cps.edu
Rashad A. Simmons / rasimmons@cps.edu
Board of Education of the City of Chicago
One North Dearborn Street
Law Department, Suite 900
Chicago, Illinois 60602
(773) 553-1700

## AFFIRMATIVE DEFENSES

Defendant Board of Education of the City of Chicago, without waiving and subject to its answers and objections to Plaintiff's Complaint, asserts the following for its affirmative defenses:

1.      All decisions relating to Plaintiff's employment were made in good faith and based on legitimate, nondiscriminatory, and non-retaliatory business reasons.

2.      Defendant exercised reasonable care to prevent and correct promptly any alleged discriminatory, retaliatory, or harassing behavior, and some or all of the Plaintiff's claims are barred due to Plaintiff's unreasonable failure to take advantage of preventative or corrective opportunities provided by Defendant or otherwise in a timely and effective manner.

3.      While Defendant expressly denies that any of its employees, officers or agents acted in any manner that would constitute a violation of any law, if any such violation occurred, it occurred outside the scope of employment or agency and without the consent of Defendant. Defendant did not authorize, condone, ratify, tolerate, or know of any illegal acts, but instead prohibited such acts, and such conduct may not be attributed to Defendant through principles of agency, *respondeat superior*, or otherwise.

4.      If the actions complained of were those of an independent third-party beyond Defendant's control, and if Defendant did not authorize, condone, ratify, tolerate, or know of any illegal acts, but instead prohibited such acts, the conduct alleged cannot be attributed to Defendant, and as a result, Plaintiff is not entitled to relief.

5.      Plaintiff's claim of sexual harassment is barred because Defendant did not have notice of the alleged sexual harassment.

6.      Without conceding damages, if Plaintiff is entitled to recover any medical damages from the Board, the Board is entitled to set-off for damages paid under the Exclusive Remedy provision of the Illinois Workers' Compensation Act (820 ILCS 305/5(a) (West 2018)).

7. Without conceding damages, if Plaintiff is entitled to recover any medical damages from the Board, the Board is entitled to set-off for damages not caused by any alleged sexual harassment or retaliation.

8. Plaintiff has failed to mitigate her alleged damages, if any. Thus, all or part of Plaintiff's claims are barred if Plaintiff has failed, refused, or neglected to mitigate or avoid the damages complained of in Plaintiff's First Amended Complaint, if any.

9. Plaintiff's claims are barred by the applicable statute of limitations.

10. Plaintiff may not maintain a claim for punitive damages against the Board of Education of the City of Chicago. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also* 745 ILCS 10/2-109.

11. Defendant reserves the right to assert additional affirmative defenses or other defenses and file such amended answers and defenses as may be appropriate as established by the case during the course of its investigation, discovery and this litigation.

Dated: July 28, 2021          Respectfully submitted,

**DEFENDANT BOARD OF EDUCATION OF THE CITY OF CHICAGO**

JOSEPH MORIARTY, General Counsel

By:    /s/ Rashad A. Simmons
        Rashad A. Simmons, Atty No. 6319497

Lindsey Goldberg / legoldberg@cps.edu
Rashad A. Simmons / rasimmons@cps.edu
Board of Education of the City of Chicago
One North Dearborn Street
Law Department, Suite 900
Chicago, Illinois 60602
(773) 553-1700

**<u>CERTIFICATE OF SERVICE</u>**

I, Rashad A. Simmons, certify that on July 28, 2021, a copy of the foregoing was filed electronically using the Court's electronic filing system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system, and parties may also access this filing through the Court's system.

By:    <u>/s/ Rashad A. Simmons</u>
           Rashad A. Simmons, ARDC No. 6319497