**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| **DORIS AGBEFE,** | ) | **PLAINTIFF DEMANDS** |
| | ) | **TRIAL BY JURY** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 19-cv-04397** |
| | ) | |
| **BOARD OF EDUCATION OF** | ) | **Hon. Gary Feinerman** |
| **THE CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff, DORIS AGBEFE, by her attorneys, Elaine K.B. Siegel & Associates, P.C., complains as follows regarding Defendant, Board of Education of the City of Chicago ("Board", sometimes "CPS"):

**PARTIES**

1.   Plaintiff is a 59-year-old (DOB February 4, 1962), Black, female, citizen of the State of Illinois, who resides in the County of Cook, State of Illinois.

2.   Defendant Board of Education of the City of Chicago is a body politic and corporate, with its principal place of business in Chicago, Illinois. At all relevant times, Defendant employed more than 500 regular employees.

**JURISDICTION, VENUE, AND PREREQUISITES**

3.   Plaintiff brings this action for damages and equitable relief pursuant to Title VI and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, *et seq.*, Title IX of the Education Amendments of 1972, 20 U.S.C §§ 1861, *et seq.,* and 42 U.S.C. § 1983.

1

4.      Jurisdiction for this action is conferred upon the Court by 28 U.S.C. §§ 1331 and 1343.

5.      Venue is appropriate pursuant to 28 U.S.C. § 1391, because Defendant is a resident of this judicial district and the events giving rise to this claim occurred in this district.

## JURY DEMAND

6.      Plaintiff demands a jury trial on all issues so triable.

## FACTUAL BACKGROUND

7.      Plaintiff is a tenured teacher, hired by the Board in approximately October, 1991.

8.      Plaintiff has been a science teacher at York Alternative High School ("York") since approximately 2014. York is a facility that provides services to juveniles detained at Cook County Jail, allowing them to continue their education while incarcerated.

9.      Plaintiff Agbefe has at all times fulfilled her job duties satisfactorily.

10.     At all relevant times, the student population at York has been approximately 80% African-American, 20% Hispanic, with a negligible number of students from other racial and ethnic subgroups.

11.     At all relevant times, the great majority of the student population at York has been low income.

12.     In June 2015, Plaintiff was transferred to Division 9, the maximum security division.

13.     Since being transferred to Division 9, Plaintiff has been subjected to sexual harassment, unwarranted discipline, unfair performance evaluations, and differential terms and conditions of employment by the Board and its employees, including York's principal,

Sharnette Sims, and James Ciesil, Deputy General Counsel for the Board of Education of the City of Chicago.

14.   Plaintiff's students frequently expose themselves and masturbate in class, stare at her while pleasuring themselves, and use sexually explicit language towards her.

15.   Plaintiff's students ridicule her in a demeaning and sexually suggestive form, making statements such as "she likes it," "she wants it," and "she needs it."

16.   On occasion, the students have touched Plaintiff inappropriately and threatened her personal safety.

17.   This behavior of the students took place on an almost daily basis while Plaintiff was assigned to Division 9.

18.   Plaintiff complained of the behavior no less than 17 times during her time in Division 9.

19.   Although the administration promised Plaintiff that something would be done, and that the offending students would be removed from Plaintiff's class, generally the administration's response to Plaintiff's complaints was to remove a student from the classroom temporarily, with no consequences, and then return him to class the next day.

20.   Plaintiff was promised a meeting with Principal Sims regarding student conduct, but Principal Sims failed to meet with Plaintiff.

21.   The students' sexual behavior violated the Student Code of Conduct for CPS.

a.   Under the Code, such sexual conduct falls in the category of "most seriously disruptive behaviors," which includes "unwelcomed sexual conduct, indecent exposure, transmitting sexually suggestive images through information technology devices, or other sexual activities which do not involve the use of force."

3

b.     The Student Code of Conduct recommends numerous interventions and consequences, such as suspension or termination from the school.

c.     The Student Code of Conduct also provides for consequences and interventions for "[p]rofane, obscene, indecent, and immoral or seriously offensive language and gestures, ... harassment" based on sex.

22.     The York administration failed and refused to take the steps set forth in the Student Code of Conduct to address the behaviors, and discouraged certain disciplinary actions.

23.     Additionally, the York administration disregarded their obligations to notify authorities of student disciplinary action. At relevant times, York has only reported a maximum of ten incidents to CPS each year, resulting in a false and fraudulent picture of safety and security at the school.

24.     The sexual harassment and lack of support from Defendant took a devastating toll on Agbefe, who was forced to take a medical leave of absence.

25.     During her treatment, Plaintiff also attempted to address the source of suffering, contacting the Board's compliance office, the Equal Opportunity Compliance Office ("EOCO"). No ameliorative action was taken.

26.     On or about May 17, 2018, Agbefe filed a charge of discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights complaining of discrimination based on sex and retaliation. Having "determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against Charging Party and a class of employees because of their sex, female, by subjecting them to sexual harassment, at York Alternative High School from July 2017 to the present, in violation of Title VII", and "that the evidence establishes reasonable cause to believe

4

that Respondent discriminated against Charging Party and a class of teachers in retaliation for engaging in a protected activity by subjecting them to different terms and conditions of employment, including but not limited to lower performance evaluations, at York Alternative High School from July 2017 to the present, in violation of Title VII", the EEOC referred the case to the United States Department of Justice for review. On December 9, 2021, the DOJ issued a Notice of Right to Sue, a true and correct copy of which is attached as Exhibit A.

**OIG Investigation and Report**

27.    In the Fall of 2016, the Office of the Inspector General ("OIG") conducted an investigation into allegations of fraudulent practices at York.

28.    In a report dated September 12, 2017, the OIG stated that York engaged in a practice of falsely inflating enrollment and attendance data and awarding credits that were not earned ("OIG Report"), attached hereto as Exhibit B. The OIG also found that multiple teachers were pressured into issuing credits to students who had not earned them.

29.    The OIG report also revealed sexual improprieties at York, finding that many of the teachers interviewed were discouraged from reporting dangerous incidents at the school. These incidents included: assaults, chronic classroom masturbation, and threatening conduct by an organized faction of students who committed sexual assaults in the jail.

30.    Based on the findings of its investigation, the OIG recommended that Principal Sims be terminated.

31.    In response to the OIG report, the Board temporarily removed Principal Sims from York, and purported to conduct their own investigation, led by Deputy General Counsel James Ciesil, Caucasian, male.

32.    Mr. Ciesil interviewed Plaintiff. In response to his questions, Plaintiff

confirmed allegations that her colleagues made to the OIG.

33.     Additionally, Plaintiff confided in Mr. Ciesil that she felt unsafe at work, and that students were masturbating in the classroom and making inappropriate sexual advances.

34.     In candor, Plaintiff told Mr. Ciesil that she felt she had been pressured into giving an unearned credit to a student.

35.     Due to the nature of the investigation, Mr. Ciesil stated that employee names would be redacted for confidentiality in his final report ("Ciesil Report"), attached herein as Exhibit C. However, his "Confidential" investigative report was released to the media, in only partially redacted form. It was published by the Chicago Sun-Times and other media outlets.

36.     The poorly redacted report disclosed Plaintiff's name explicitly, and recounted her grievances with York.

37.     In his report, Mr. Ciesil downplayed the disciplinary problems at York, and wrote that nearly every teacher interviewed stated that a "threat" by a student at York is a rare event. He concluded that many teachers stated that they had never been threatened in a manner that left them in fear for their bodily safety, or felt sexually compromised.

38.     Mr. Ciesil also stated that experts that entered York from the Network or Central Office had never seen a student threaten anyone.

39.     Mr. Ciesil singled out Plaintiff as the only person he interviewed who expressed fear for their safety while at York, portraying Plaintiff as overreacting and misrepresenting the situation.

40.     In addition, Mr. Ciesil stated that there was a "racial" element to the OIG investigation, that those teachers who were critical of Principal Sims and York were disgruntled employees with performance issues, and insinuated that those teachers and staff

who were critical of Principal Sims and York were biased by race.

41.    The Board's release of the investigative report was unprecedented. The Board had never released a public report attacking an investigation by OIG.

42.    After Mr. Ciesil's report was released, the Network Chief recommended that everyone read the report, vindicating Dr. Sims.

43.    Rejecting the OIG's recommendation, the Board reinstated Dr. Sims, an action that was also unprecedented.

44.    The CEO of CPS, Forrest Claypool, issued a statement thanking Principal Sims, and apologizing to her for the "blight on her reputation."

45.    Plaintiff quickly felt the repercussions from the interview with Mr. Ciesil and the resulting report.

46.    Upon returning to work, Dr. Sims said that her family would seek vengeance against those responsible for her removal.

47.    Dr. Sims was actively causing staff and her family to work against those that disclosed the improper practices at York.

48.    In May of 2017, Principal Sims gave Plaintiff a false performance evaluation of "not proficient."

49.    Plaintiff disagreed with the performance evaluation and filed a grievance, on which she prevailed. Nonetheless, Plaintiff's adjusted evaluation still did not reflect Plaintiff's actual performance.

50.    Having exhausted all avenues with the York administration, Plaintiff took her concerns to the Board itself. Mr. Ciesil noted that the school had security cameras and offered to place an additional staff member in her classroom. When Plaintiff stated that those measures

were insufficient, Mr. Ciesil responded that when Plaintiff chose to work at York, she clearly knew that she was signing up to work inside a jail, and that her students would be inmates charged with serious crimes.

## COUNT I
## SEX DISCRIMINATION IN VIOLATION OF TITLE IX

1-50.   Plaintiff repeats and realleges paragraphs 1 through 50 above, as though fully setforth herein.

### Unlawful Sex-Based Discrimination Against
### Employee of Federally-Funded Program

51.     Title IX of the Education Amendments of 1972, 20 U.S.C §§ 1861, *et seq.* ("Title XI"), prohibits employment discrimination on the basis of sex in programs receiving federal financial assistance.

52.     At all relevant times, the Board was receiving federal financial assistance.

53.     As a teacher at York, Plaintiff participated in a program or activity that received federal financial assistance.

54.     The United States Department of Education regulations implementing Title IX prohibit employment practices that discriminate on the basis of sex.

55.     In violation of 34 C.F.R. § 106.1 *et seq.*, the Board unlawfully subjected Plaintiff to discrimination and retaliation, on the basis of her sex, in its educational practices at York, including through employment.

56.     In violation of 34 C.F.R. § 106.1 *et seq.*, discriminating against Plaintiff on the basis of her sex, through the actions set forth above, the Board denied Plaintiff equal opportunity to participate in employment in the Chicago Public Schools. Plaintiff's employment opportunities were different from those afforded others in the Chicago Public

8

Schools, where student discipline policies were enforced, and sexual harassment of teachers was prohibited.

**Unlawful Discrimination Based on Sex,**
**Depriving Beneficiaries of Federally-Funded Program**
**of Equality of Opportunity and Non-Discriminatory Treatment**

57.     In the alternative, by engaging in and failing to prevent ongoing sex discrimination and retaliation against Plaintiff, the Board failed to assure equality of opportunity to, and nondiscriminatory treatment of, its beneficiaries, as required by 34 C.F.R. § 106 app A to Part 106; see also 34 C.F.R. § 100 app B, VIIIA.

58.     In violation of 34 C.F.R. § 106.1 *et seq.* and 34 C.F.R. § 106 app A to Part 106, through, *inter alia,* the actions set forth in paragraphs 1-57 above, the Board subjected Plaintiff to discrimination on the basis of sex in its educational practices at York, including through employment. see also 34 C.F.R. § 100 app B, VIIIA.

59.     By failing to prevent ongoing sex discrimination and retaliation against Plaintiff, the Board failed to assure equality of opportunity to, and nondiscriminatory treatment of, the student beneficiaries of the federal funding, as required by 34 C.F.R. § 106 app A to Part 106; see also 34 C.F.R. § 100 app B, VIIIA.

60.     Defendant discriminated against Ms. Agbefe on the basis of her female sex, in a manner that resulted in segregation, exclusion, and other discrimination against students, in one or more of the following ways:

a.   Ms. Agbefe, female, was a member of a protected class;

b.   Ms. Agbefe's students, all of whom were male, were beneficiaries protected by Title VI against segregation, exclusion or other discrimination:

i.     At all relevant times, most of Ms. Agbefe's students at York were

9

members of protected racial, ethnic and national origin classes, Black and
Hispanic;

ii.  At all relevant times, most of Ms. Agbefe's students were low income,
*i.e.*, qualifying for free or reduced priced lunches;

iii. At all relevant times, most of Ms. Agbefe's students were at high risk
for academic failure;

iv.  At all relevant times, Ms. Agbefe's students were housed in
maximum security detention facilities;

v.   At all relevant times, Ms. Agbefe's students were at risk for
criminal convictions, longer-term incarceration, and recidivism;

c.  Violating the Student Code of Conduct, Ms. Agbefe's students frequently
engaged in sexual harassment and classroom violence, including taunts, sexually
suggestive remarks, sexual assaults, and masturbation, in Ms. Agbefe's
classroom, commonly with impunity;

d.  The Student Code of Conduct applied to schools throughout the Chicago Public
Schools, and compliance was mandatory, but the York administration turned a blind
eye to its chronic violation in Ms. Agbefe's classroom, contradicted the
applicable procedures of the Department of Corrections, and failed to provide
disciplinary support;

e.  The York administration regularly underreported infractions of the Student
Code of Conduct, in an effort to cover up its chronic violations;

f.  The York administration acquiesced in the violations of the Student Code of
Conduct in Ms. Agbefe's classroom, and thus endangered the safety of Plaintiff,

10

students, and other staff, unlike other schools in the Chicago Public School system, where the Student Code of Conduct was enforced, students' education was supported by consistent disciplinary structure, and students and faculty were afforded protection against a sexually hostile educational environment;

g. The Board held the York students to grossly lower standards of conduct than students elsewhere in the Chicago Public Schools, although the York students are at higher risk for school violence, academic failure, future criminal conduct, and recidivism;

h. The York administration thereby failed to provide appropriate discipline to the at-risk students in Ms. Agbefe's classroom, treating them unequally to students elsewhere in the Chicago Public Schools, where the Student Code of Conduct was enforced;

i. The discriminatory and retaliatory failure of the York administration to inculcate and support disciplinary standards, and enforce the Student Code of Conduct, resulted in a failure to correct antisocial behaviors, and to foster social and employment skills;

j. The failure of the York administration to enforce the Student Code of Conduct put the students at increased risk for academic failure, criminal misconduct and recidivism;

k. The failure of the York administration to enforce the Student Code of Conduct deprived Ms. Agbefe's students of equal education opportunities;

l. The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom undercut her authority in the classroom,

11

interfering with her performance and effectiveness, and impairing the quality of educational services received by the students;

m. The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom interfered with the delivery of instruction, depriving her students of education that children elsewhere in the Chicago Public Schools received;

n. A well-educated African-American woman and teacher of the sciences, Ms. Agbefe's value as a role model for her York students was tarnished by the willful failure of the York administration to address the misconduct;

o. Put on clear notice of the failures of the York administration through the investigation and report of the OIG, the Board not only failed to intervene, but perpetrated a retaliatory cover-up, through the purported investigation and report of Deputy General Counsel James Ciesil;

p. By disregarding the OIG's findings supporting Plaintiff's allegations, and retaliating against participants in the investigation, the Board deprived students of equal educational opportunity;

q. In a report specifically naming Plaintiff Agbefe (see Exhibit C), Board Counsel James Ciesil publicly discredited Plaintiff on account of her sex, alleging that other teachers had no security concerns, and accusing her of falsehoods;

r. In his report, Ms. Ciesil disparaged Plaintiff through a sexist stereotype, calling her "hypersensitive," and stating that Plaintiff expected—and should have expected—the sexually harassing behavior of the students when she went to

teach at York;

s.  Underplaying the credible evidence of sexual harassment at York, in his report, Mr. Ciesil contended that the OIG report, and the staff members who were critical of Principal Sims and/or York, were racially motivated;

t.  Mr. Ciesil's biased findings were discriminatory and retaliatory on the basis of sex;

u.  In further disregard of the credible evidence of sexual harassment at York, the Board failed to properly investigate, or to seek compliance with system-wide standards, policies, and procedures, when the OIG reported that York's education policies, including its employment practices, had a discriminatory impact upon direct beneficiaries of the federal funds, in this case, the students themselves (see Exhibit B);

v.  Defendant denied Plaintiff full access to employment opportunities;

w.  The Board refused Plaintiff's requests for a reassignment to a different division, despite her fear for her personal safety;

x.  Defendant Board issued a negative and false performance evaluation to Plaintiff, thus limiting her opportunities for continued employment in the Chicago Public Schools, and for employment elsewhere;

y.  Similarly-situated male individuals employed by the Chicago Public Schools were treated more favorably than Plaintiff; and

z.  The Board's employment discrimination and retaliation infected its students' entitlement to services, programs, and activities, failing to address the urgent

educational needs of this highly at-risk student population.

61.    The Board had knowledge that Plaintiff was being subjected to sex discrimination and harassment on a routine basis.

62.    As matters escalated, Plaintiff complained that such actions were affecting her mental and physical well-being, but her pleas for corrective action were ignored.

63.    Through the actions set forth above, Defendant denied Plaintiff equal access to employment opportunities.

64.    The Board refused to protect Ms. Agbefe against discrimination and harassment, denying leave/accommodation, issuing false evaluations, and releasing and publishing a report with her confidential statements unredacted.

65.    Plaintiff met the Board's legitimate employment expectations, yet they treated her less favorably than similarly-situated male employees.

66.    Plaintiff suffered, and continues to suffer, irreparable injury, for which Plaintiff has no adequate remedy at law.

67.    As a direct and proximate result of the Board's knowing and intentional actions, Plaintiff has suffered lost wages, direct physical and emotional injury, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

68.    Defendant' actions were knowing, intentional, willful, and wanton. The Board discriminated against Plaintiff with malice and/or reckless indifference to her federally protected rights.

69.    But for Plaintiff's female sex, the Board would not have subjected her to the adverse employment actions.

70.    As a direct and proximate result of the Board's retaliatory actions, Plaintiff

has suffered lost wages, direct physical injury, emotional distress, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

WHEREFORE, Plaintiff Doris Agbefe prays that this Honorable Court find that Defendant Board's conduct violated Plaintiff's rights under Title IX of the Civil Rights Act, and enter a judgment making the following findings and granting the following relief:

A. Award Plaintiff all money reasonably calculated to compensate her for all the monetary damages sustained as a result of the discrimination and retaliation by Defendant;

B. Award Plaintiff all money reasonably calculated to compensate her for her direct physical injury and emotional distress sustained as a result of the discrimination by Defendant;

C. Award Plaintiff money reasonably calculated to compensate her for all the monetary damages sustained as a result of the retaliation by Defendant;

D. Enter an order declaring that the Board's employment practices discriminated against Plaintiff on the basis of sex;

E. Enter an order declaring that the Board's discriminatory employment practices denied the student beneficiaries of the federal financial assistance of equal educational opportunity, resulting in segregation, exclusion, and other discrimination of the student beneficiaries;

F. Expunge Plaintiff's personnel file of false, defamatory and prejudicial materials, including false evaluations and disciplinary content;

15

G. Award back and front pay.

H. Enter an order requiring a corrective action plan to remediate the injury to students due to Defendant' unlawful conduct;

I. Award reasonable attorneys' fees and costs; and

J. Award such other relief as it may deem just and equitable.

**COUNT II**
**RETALIATION IN VIOLATION OF TITLE IX**

1-70. Plaintiff repeats and realleges paragraphs 1 through 70 above as though fully set forth herein.

**Unlawful Sex-Based Retaliation**
**Against Employee of Federally-Funded Program**

71. Title IX of the Education Amendments of 1972, 20 U.S.C §§ 1861, *et seq.* ("Title IX"), prohibits employment discrimination on the basis of sex, including retaliation, in programs receiving federal financial assistance.

72. At all relevant times, the Board was receiving federal financial assistance.

73. As a teacher at York, Plaintiff participated in a program or activity that received federal financial assistance.

74. The United States Department of Education regulations implementing Title IX prohibit employment practices that discriminate on the basis of sex, including through retaliation.

75. In violation of 34 C.F.R. § 106.71, retaliating against Plaintiff on the basis of her sex, through the actions set forth above, the Board denied Plaintiff equal opportunity to participate in employment in the Chicago Public Schools. Plaintiff's employment opportunities were different from those afforded others in the Chicago Public Schools,

where student disciplinepolicies were enforced, and sexual harassment of teachers was prohibited.

76.     In violation of 34 C.F.R. § 106.71, the Board unlawfully subjected Plaintiff to discrimination and retaliation, on the basis of her sex, in its educational practices at York, including through employment.

**Unlawful Retaliation Based on Sex,**
**Depriving Beneficiaries of Federally-Funded Program Of**
**Equality of Opportunity and Non-Discriminatory Treatment**

77.     In the alternative, by engaging in and failing to prevent ongoing sex discrimination and retaliation against Plaintiff, the Board failed to assure equality of opportunity to, and nondiscriminatory treatment of, its beneficiaries.

78.     Through, *inter alia,* the actions set forth in paragraphs 1-77 above, the Board subjected Plaintiff to retaliation on the basis of sex in its educational practices at York, including through employment.

79.     By failing to prevent ongoing sex discrimination and retaliation against Plaintiff, the Board failed to assure equality of opportunity to, and nondiscriminatory treatment of, the student beneficiaries of the federal funding.

80.     Defendant retaliated against Ms. Agbefe on the basis of her female sex, in a manner that resulted in segregation, exclusion and other discrimination against students, in one or more of the following ways:

a.     Ms. Agbefe's students, all of whom were male, were beneficiaries protected by Title VI against segregation, exclusion or other discrimination;

b.     At all relevant times, most of Ms. Agbefe's students at York were members of protected racial, ethnic and national origin classes, Black and

17

Hispanic; were low income; and were at high risk for academic failure;

c.      At all relevant times, Ms. Agbefe's students were housed in maximum security detention facilities;

d.      At all relevant times, Ms. Agbefe's students were at risk for criminal convictions, longer-term incarceration, and recidivism;

e.      Violating the Student Code of Conduct, Ms. Agbefe's students frequently engaged in sexual harassment and classroom violence, including taunts, sexually suggestive remarks, sexual assaults, and masturbation, in Ms. Agbefe's classroom, commonly with impunity;

f.      The Student Code of Conduct applied to schools throughout the Chicago Public Schools, and compliance was mandatory, but the York administration turned a blind eye to its chronic violation in Ms. Agbefe's classroom, contradicted the applicable procedures of the Department of Corrections, and failed to provide disciplinary support;

g.      The York administration regularly underreported infractions of the Student Code of Conduct, in an effort to cover up its chronic violations;

h.      The York administration acquiesced in the violations of the Student Code of Conduct in Ms. Agbefe's classroom, and thus endangered the safety of Plaintiff, students, and other staff, unlike other schools in the Chicago Public School system, where the Student Code of Conduct was enforced, students' education was supported by consistent disciplinary structure, and students and faculty were afforded protection against a sexually hostile educational

18

environment;

i.      The Board held the York students to grossly lower standards of conduct than students elsewhere in the Chicago Public Schools, although the York students are at higher risk for school violence, academic failure, future criminal conduct, and recidivism;

j.      The York administration thereby failed to provide appropriate discipline to the at-risk students in Ms. Agbefe's classroom, treating them unequally to students elsewhere in the Chicago Public Schools, where the Student Code of Conduct was enforced;

k.      The discriminatory and retaliatory failure of the York administration to inculcate and support disciplinary standards, and enforce the Student Code of Conduct, resulted in a failure to correct antisocial behaviors, and to foster social and employment skills;

l.      The failure of the York administration to enforce the Student Code of Conduct put the students at increased risk for academic failure, criminal misconduct and recidivism;

m.      The failure of the York administration to enforce the Student Code of Conduct deprived Ms. Agbefe's students of equal education opportunities;

n.       The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom undercut her authority in the classroom, interfering with her performance and effectiveness, and

impairing the quality of educational services received by the students;

o.     The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom interfered with the delivery of instruction, depriving her students of education that children elsewhere in the Chicago Public Schools received;

p.     A well-educated African-American woman and teacher of the sciences, Ms. Agbefe's value as a role model for her York students was tarnished by the willful failure of the York administration to address the misconduct;

q.     Put on clear notice of the failures of the York administration through the investigation and report of the OIG, the Board not only failed to intervene, but perpetrated a retaliatory cover-up, through the purported investigation and report of Deputy General Counsel James Ciesil;

r.     By disregarding the OIG's findings supporting Plaintiff's allegations, and retaliating against participants in the investigation, the Board deprived students of equal educational opportunity;

s.     In a report specifically naming Plaintiff Agbefe, Board Counsel James Ciesil publicly discredited Plaintiff on account of her sex, alleging that other teachers had no security concerns, and accusing her of falsehoods (see Exhibit C);

t.     In his report, Ms. Ciesil disparaged Plaintiff through sexist stereotyping, calling her "hypersensitive," and stating that Plaintiff expected—and should have expected—the sexually harassing behavior of the students when she went

20

to teach at York;

u.      Underplaying the credible evidence of sexual harassment at York, in his report, Mr. Ciesil retaliated by claiming that the OIG report, and the staff members who were critical of Principal Sims and/or York, were racially motivated, thus depriving York students of corrective measures to remedy their unequal treatment; and

v.      Defendant' denial of Plaintiff's full access to employment opportunities deprived York students of a well-qualified teacher and role model.

81.      The Board's employment discrimination and retaliation infected its students' entitlement to services, programs, and activities, failing to address the urgent educational needs of this highly at-risk student population.

82.      Plaintiff suffered, and continues to suffer, irreparable injury, for which Plaintiff has no adequate remedy at law.

83.      As a direct and proximate result of the Board's knowing and intentional actions, Plaintiff has suffered lost wages, direct physical and emotional injury, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

84.      Defendant' actions were knowing, intentional, willful, and wanton. The Board discriminated against Plaintiff with malice and/or reckless indifference to her federally protected rights.

85.      But for Plaintiff's female sex, the Board would not have subjected her to the adverse employment actions, including discrimination and retaliation.

86.      As a direct and proximate result of the Board's retaliatory actions, Plaintiff has suffered lost wages, direct physical injury, emotional distress, loss of reputation,

compensatory damages, and has incurred attorney's fees and costs.

WHEREFORE, Plaintiff Doris Agbefe prays that this Honorable Court find that Defendant Board's conduct violated Plaintiff's rights under Title IX of the Civil Rights Act, and enter a judgment making the following findings and granting the following relief:

A.  Award Plaintiff all money reasonably calculated to compensate her for all the monetary damages sustained as a result of the discrimination and retaliation by Defendant;

B.  Award Plaintiff all money reasonably calculated to compensate her for her direct physical injury and emotional distress sustained as a result of the discrimination by Defendant;

C.  Enter an order declaring that the Board's employment practices discriminated against Plaintiff on the basis of sex;

D.  Enter an order declaring that the Board's discriminatory employment practices denied the student beneficiaries of the federal financial assistance of equal educational opportunity, resulting in segregation, exclusion, and other discrimination of the student beneficiaries;

E.  Expunge Plaintiff's personnel file of false, defamatory and prejudicial materials, including false evaluations and disciplinary content;

F.  Award back and front pay;

G.  Enter an order requiring a corrective action plan to remediate the injury to students due to Defendant' unlawful conduct;

H.  Award reasonable attorneys' fees and costs; and

I.  Award such other relief as it may deem just and equitable.

22

## COUNT III
## RACE DISCRIMINATION IN VIOLATION OF TITLE VI

1-86.  Plaintiff repeats and realleges paragraphs 1 through 86 above as though fully set forth herein.

87. Title VI of the Civil Rights Act of 1964, 42 U.S.C § 2000d, *et seq.* ("Title VI"), prohibits race discrimination against people participating in or benefiting from any program or activity receiving Federal financial assistance. 42 U.S.C. § 2000d.

88. At all material times, the Board was receiving federal funding, as contemplated by Title VI.

89. As a teacher at York, Plaintiff participated in a program or activity that received Federal assistance.

90. A purpose of the federal funding is to provide instruction to CPS students, through financial support for, *inter alia,* employment of faculty.

91. In violation of 34 C.F.R. § 100.3(b)(vi), the Board denied Plaintiff equal opportunity to participate in the educational program at York as an employee. Plaintiff's opportunities were different from those afforded others under the program.

92. In the alternative, "where a primary objective of Federal financial assistance is not to provide employment, but discrimination on the ground of race, color, or national origin in the employment practices of the recipient or other persons subject to the regulation tends, on the ground of race, color, or national origin, to exclude individuals from participation in, to deny them the benefits of, or to subject them to discrimination under any program to which this regulation applies, the foregoing provisions of this paragraph (c) shall apply to the employment practices of the recipient ... , to the extent necessary to assure equality of opportunity to, and

23

nondiscriminatory treatment of, beneficiaries." 34 C.F.R. §100(c)(3). Moreover, "Recipients may not engage in any employment practice that discriminates on the basis of race, color, or national origin if such discrimination tends to result in segregation, exclusion or other discrimination against students." 34 C.F.R. 100 App. B § VIII.A.

93. In violation of 34 C.F.R. §100.3(c)(l) and 34 C.F.R. § 100.3(c)(3), through, *inter alia,* the actions set forth in paragraphs 94-99 below, the Board subjected Plaintiff to discrimination on the ground of race in its educational practices at York, including through employment.

94. By failing to prevent ongoing race discrimination and retaliation against Plaintiff, the Board did not assure equality of opportunity to, and nondiscriminatory treatment of, its beneficiaries, as required by 34 C.F.R. § 100.3(c)(3).

95. Defendant discriminated against Ms. Agbefe on the basis of her race, African-American, in a manner that resulted in segregation, exclusion, and other discrimination against students, in one or more of the following ways:

    a.  Ms. Agbefe, Black, was a member of a protected class;

    b.  Ms. Agbefe's students were beneficiaries protected by Title VI against segregation, exclusion, or other discrimination;

    c.  At all relevant times, virtually all of Ms. Agbefe's students at York were members of protected racial classes, predominately Black with a substantial number of Hispanic students;

    d.  At all relevant times, most all of Ms. Agbefe's students were low income, *i.e.*, qualifying for free or reduced priced lunches;

    e.  At all relevant times, virtually all of Ms. Agbefe's students were at high risk for academic failure;

f.  At all relevant times, Ms. Agbefe's students were housed in maximum security pretrial detention facilities;

g.  At all relevant times, virtually all of Ms. Agbefe's students were at risk for criminal convictions, longer-term incarceration, and recidivism;

h.  All of Ms. Agbefe's students were male;

i.  Ms. Agbefe's students frequently engaged in sexual harassment and classroom violence, including taunts, sexually suggestive remarks, sexual assaults, and masturbation, in Ms. Agbefe's classroom;

j.  Such sexual harassment and violence violated the provisions of the Student Code of Conduct, thus endangering the safety of Plaintiff, students, and other staff;

k.  The Student Code of Conduct was applied and enforced throughout the Chicago Public Schools;

l.  Although the Student Code of Conduct applied to the students at York, the York administration turned a blind eye to its chronic violation in Ms. Agbefe's classroom, and failed to provide disciplinary support;

m.  The York administration regularly underreported infractions of the Student Code of Conduct, in an effort to cover up its chronic violations;

n.  The York administration acquiesced in the flagrant sexual harassment in Ms. Agbefe's classroom, unlike other schools in the Chicago Public School system;

o.  In other CPS schools where the Student Code of Conduct was enforced,

students' education was supported by uniform disciplinary structure, and
students and faculty were afforded protection against a sexually hostile
educational environment;

p.  The failure of the York administration to inculcate and support disciplinary
standards, and enforce the Student Code of Conduct, resulted in a failure to
correct antisocial behaviors, and develop social and employment skills;

q.  The failure of the York administration to enforce the Student Code of Conduct
put the students at increased risk for academic failure, criminal misconduct
and recidivism;

r.  The failure of the York administration to enforce the Student Code of
Conduct deprived Ms. Agbefe's students of equal education opportunities;

s.  The York administration's failure to remediate the sexually abusive
environment in Ms. Agbefe's classroom undercut her authority in the
classroom, interfering with her performance and effectiveness, and
impairing the quality of educational services received by the students;

t.  The York administration's failure to remediate the sexually abusive
environment in Ms. Agbefe's classroom interfered with the delivery of
instruction, depriving her students of education that children elsewhere in the
Chicago Public Schools received;

u.  A well-educated African-American woman and teacher of the sciences,
Ms. Agbefe's value as a role model for her York students was tarnished by
the willful failure of the York administration to address the misconduct;

26

v.  Put on clear notice of the failures of the York administration through the investigation and report of the OIG, the Board not only failed to intervene, but engaged in a cover-up, through the purported investigation and report of Deputy General Counsel James Ciesil;

w.  The Board holds the York students to grossly lower standards of conduct than students elsewhere in CPS, although the York students are at higher risk for school violence, academic failure, future criminal conduct, and recidivism;

x.  By participating in the OIG investigation, Plaintiff was advocating on behalf of her students, who were primarily African-American or Hispanic;

y.  In a report specifically naming Plaintiff Agbefe, Board Counsel James Ciesil, who is Caucasian, publicly discredited Plaintiff on account of her race, by alleging that she was the only African-American teacher with security concerns, and accusing her of falsehoods;

z.  James Ciesil disparaged Plaintiff by calling her "hypersensitive," and stating that Plaintiff expected—and should have expected—the sexually harassing behavior of the students when she went to teach at York;

aa. Ciesil's false and negative findings were racially discriminatory;

bb. The Board failed to properly investigate, or to seek compliance with system-wide standards, policies, and procedures, when the OIG reported that York's education policies, including its employment practices, had a discriminatory impact upon direct beneficiaries of the federal funds, in this case, the students

themselves;

cc. By disregarding the OIG's findings supporting Plaintiff's allegations, the Board deprived students of equal educational opportunity;

dd. The Board's employment discrimination infects its students' entitlement to services, programs, and activities to address the urgent educational needs of this highly at-risk student population;

ee. Defendant denied Plaintiff full access to employment opportunities;

ff. The Board refused Plaintiff's requests for a reassignment to a different division, despite her fear for her personal safety;

gg. Defendant Board issued a negative and false performance evaluation to Plaintiff; and

hh. Similarly-situated individuals of a different race employed by the Chicago Public Schools were treated more favorably than Plaintiff.

96. The Board was aware that Plaintiff was being subjected to discrimination and harassment on a routine basis. As matters escalated, Plaintiff complained that such actions were affecting hermental and physical well-being, but her pleas for corrective action were ignored.

97. Plaintiff suffered, and continues to suffer, irreparable injury.

98. Plaintiff has no adequate remedy at law.

99. As a direct and proximate result of the Board's discriminatory actions, Plaintiff has suffered lost wages, direct physical and emotional injury, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

WHEREFORE, Plaintiff Doris Agbefe prays that this Honorable Court find that Defendant Board's conduct violated Plaintiff's rights under Title VI of the Civil Rights Act, and enter a judgment making the following findings and granting the following relief:

A. Award Plaintiff all money reasonably calculated to compensate her for all the monetary damages sustained as a result of the discrimination and retaliation by Defendant;

B. Award Plaintiff all money reasonably calculated to compensate her for her direct physical injury and emotional distress sustained as a result of the discrimination by Defendant;

C. Enter an order declaring that the Board's employment practices discriminated against Plaintiff on the basis of race;

D. Enter an order declaring that the Board's discriminatory employment practices denied the student beneficiaries of the federal financial assistance of equal educational opportunity, resulting in segregation, exclusion, and other discrimination of the student beneficiaries;

E. Expunge Plaintiff's personnel file of false, defamatory and prejudicial materials, including false evaluations and disciplinary content;

F. Award back and front pay;

G. Enter an order requiring a corrective action plan to remediate the injury to students due to Defendant' unlawful conduct;

H. Award reasonable attorneys' fees and costs; and

I. Award such other relief as it may deem just and equitable.

**COUNT IV**
**RETALIATION IN VIOLATION OF TITLE VI (RACE)**

1-99.   Plaintiff repeats and realleges paragraphs 1 through 99 above as though fully set forth herein.

## Unlawful Race-Based  Retaliation Against Employee Of Federally-Funded Program

100.     Title VI of the Civil Rights Act of 1964, 42 U.S.C §§ 2000d, *et seq.* ("Title VI"), prohibits race discrimination against people participating in or benefiting from any program or activity receiving federal financial assistance. 42 U.S.C. § 2000d. Retaliation based on race is a type of race discrimination prohibited by Title VI.

101.     At all material times, the Board was receiving federal funding.

102.     As a teacher at York, Plaintiff participated in a program or activity that received federal assistance.

103.     The United States Department of Education regulations implementing Title VI prohibit employment practices that are racially discriminatory, including retaliation based on race.

104.     In violation of 34 C.F.R. § 100.3(b)(vi), in retaliation against Plaintiff's advocacy against harmful educational practices regarding the dangerous condition of her classroom, the Board denied Plaintiff equal opportunity to participate in employment in the Chicago Public Schools. Plaintiff's employment opportunities were different from those afforded others in the Chicago Public Schools.

105.     In violation of 34 C.F.R. §100.3(c)(l) and 34 C.F.R. § 100.3(c)(3), the Board subjected Plaintiff to discrimination and retaliation, on the basis of her race, in its educational practices at York, including through employment.

106.     In the alternative, by failing to prevent ongoing race discrimination and

retaliation against Plaintiff, the Board did not assure equality of opportunity to, and nondiscriminatory treatment of, its beneficiaries, as required by 34 C.F.R. § 100.3(c)(3).

107.    In violation of 34 C.F.R. §100.3(c)(l) and 34 C.F.R. § 100.3(c)(3), through, *inter alia,* the actions set forth above, the Board subjected Plaintiff to retaliation on the basis of race in its educational practices at York, including through employment.

**Unlawful Retaliation Based On Race,**
**Depriving Beneficiaries Of Federally Funded Program of**
**Equality of Opportunity and Non-Discriminatory Treatment**

108.    By failing to prevent ongoing race discrimination and retaliation against Plaintiff, the Board failed to assure equality of opportunity to, and nondiscriminatory treatment of, the student beneficiaries of the federal funding, as required by 34 C.F.R. § 100.3(c)(3).

109.    In violation of 34 C.F.R. § 103.3 (c) (1) and (c)(3), through, *inter alia,* the actions set forth above, the Board subjected Plaintiff to retaliation on the basis of race in its educational practices at York, including through employment.

110.    Defendant retaliated against Ms. Agbefe on the basis of her race, African-American, in a manner that resulted in segregation, exclusion and other discrimination against students, in one or more of the following ways:

   a. Ms. Agbefe, Black, was a member of a protected class;

   b. Ms. Agbefe's students were beneficiaries protected by Title VI against segregation, exclusion or other discrimination;

      i. At all relevant times, Ms. Agbefe's students at York were primarily members of protected racial, ethnic and national origin classes, Black and Hispanic;

    ii. At all relevant times, most of Ms. Agbefe's students were low income, *i.e.,* qualifying for free or reduced priced lunches;

    iii. At all relevant times, most of Ms. Agbefe's students were at high risk for academic failure;

    iv. At all relevant times, Ms. Agbefe's students were housed in maximum security detention facilities;

    v. At all relevant times, Ms. Agbefe's students were at risk for criminal convictions, longer-term incarceration, and recidivism;

c. All of Ms. Agbefe's students were male;

d. Violating the Student Code of Conduct, Ms. Agbefe's students frequently engaged in sexual harassment and classroom violence, including taunts, sexually suggestive remarks, sexual assaults, and masturbation, in Ms. Agbefe's classroom, commonly with impunity;

e. The Student Code of Conduct applied to schools throughout the Chicago Public Schools, and compliance was mandatory;

f. Although the Student Code of Conduct applied to the students at York, the York administration turned a blind eye to its chronic violation in Ms. Agbefe's classroom, contradicted the applicable procedures of the Department of Corrections, and failed to provide disciplinary support;

g. The York administration regularly underreported infractions of the Student Code of Conduct, in an effort to cover up its chronic violations;

h. In retaliation against Ms. Agbefe's reports of chronic misconduct and flagrant sexual harassment in her classroom, the York administration

32

acquiesced in the violations of the Student Code of Conduct, and thus endangered the safety of Plaintiff, students, and other staff, unlike other schools in the Chicago Public School system, where the Student Code of Conduct was enforced, students' education was supported by uniform disciplinary structure, and students and faculty were afforded protection against a sexually hostile educational environment;

i.  The Board held the York students to grossly lower standards of conduct than students elsewhere in the Chicago Public Schools, although the York students are at higher risk for school violence, academic failure, future criminal conduct, and recidivism;

j.  The York administration thereby failed to provide appropriate discipline to the at-risk students in Ms. Agbefe's classroom, treating them unequally to students elsewhere in the Chicago Public Schools, where the Student Code of Conduct was enforced;

k.  The discriminatory and retaliatory failure of the York administration to inculcate and support disciplinary standards, and enforce the Student Code of Conduct, resulted in a failure to correct antisocial behaviors, and to foster social and employment skills;

l.  The failure of the York administration to enforce the Student Code of Conduct put the students at increased risk for academic failure, criminal misconduct and recidivism;

m.  The failure of the York administration to enforce the Student Code of

33

Conduct deprived Ms. Agbefe's student of equal education opportunities;

n. The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom undercut her authority in the classroom, interfering with her performance and effectiveness, and impairing the quality of educational services received by the students;

o. The York administration's failure to remediate the sexually abusive environment in Ms. Agbefe's classroom interfered with the delivery of instruction, depriving her students of education that children elsewhere in the Chicago Public Schools received;

p. A well-educated African-American woman and teacher of the sciences, Ms. Agbefe's value as a role model for her York students was tarnished by the willful failure of the York administration to address the misconduct;

q. Put on clear notice of the failures of the York administration through the investigation and report of the OIG, the Board not only failed to intervene, but perpetrated a retaliatory cover-up, through the purported investigation and report of Deputy General Counsel James Ciesil;

r. By disregarding the OIG's findings supporting Plaintiff's allegations, and retaliating against participants in the investigation, the Board deprived students of equal educational opportunity;

s. Mr. Ciesil's characterization of the evidence and disparagement of those teachers, including Ms. Agbefe, who had participated in the OIG investigation, were calculated to retaliate against Plaintiff and her colleagues for participating in the OIG investigation, where Ms. Agbefe was

advocating on behalf of her students, who were primarily African-American or Hispanic;

t.  In a report specifically naming Plaintiff Agbefe, Board Counsel James Ciesil, who is Caucasian, publicly discredited Plaintiff on account of her race, alleging that she was the only African-American teacher with security concerns, and accusing her of falsehoods;

u.  James Ciesil disparaged Plaintiff by calling her "hypersensitive," and stating that Plaintiff expected—and should have expected—the sexually harassing behavior of the students when she went to teach at York;

v.  Ciesil stated in his report that the OIG report, and the staff members who were critical of Principal Sims and/or York, were racially motivated;

w.  Ciesil's false and negative findings were racially discriminatory and retaliatory;

x.  In retaliation against the faculty, including Ms. Agbefe, who participated in the OIG investigation, the Board failed to properly investigate, or to seek compliance with system-wide standards, policies, and procedures, when the OIG reported that York's education policies, including its employment practices, had a discriminatory impact upon direct beneficiaries of the federal funds, in this case, the students themselves;

y.  Defendant denied Plaintiff full access to employment opportunities;

z.  The Board refused Plaintiff's requests for a reassignment to a different division, despite her fear for her personal safety;

aa. Defendant Board issued a negative and false performance evaluation to Plaintiff, thus limiting her opportunities for continued employment and

35

for employment elsewhere in the Chicago Public Schools;

bb. Similarly-situated individuals of a different race, ethnicity, or national origin, employed by the Chicago Public Schools, were treated more favorably than Plaintiff; and

cc. The Board's employment discrimination and retaliation infected its students' entitlement to services, programs, and activities that address the urgent educational needs of this highly at-risk student population.

111. The Board knew that Plaintiff was being subjected to discrimination and harassment on a routine basis. As matters escalated, Plaintiff complained that such actions were affecting her mental and physical well-being, but her pleas for corrective actions were ignored.

a. Defendant denied Plaintiff full access to employment opportunities;

b. The Board refused Plaintiff's requests for a reassignment to a different division, despite her fear for her personal safety;

c. Plaintiff quickly felt the repercussions from the interview with Mr. Ciesil and the resulting report;

d. Upon returning to work, Dr. Sims said that her family would seek vengeance against those responsible for her removal;

e. Dr. Sims issued a negative and false performance evaluation to Plaintiff; and

f. Similarly-situated individuals of a different race were treated more favorably than Plaintiff.

112. The Board was aware that Plaintiff was being subjected to discrimination and harassment on a routine basis. As matters escalated, Plaintiff explained that such actions were affecting her mental and physical well-being, but her pleas for corrective action were ignored.

113.     In response to this protected activity, the Board retaliated against Plaintiff by refusing to protect her against discrimination and harassment, denying leave/accommodation, issuing false evaluations, and releasing and publishing a report with her statements unredacted.

114.     The Board retaliated against Plaintiff with malice and/or reckless indifference to her federally protected rights.

115.     Plaintiff met the Board's legitimate employment expectations, yet they treated her less favorably than similarly situated employees who did not engage in statutorily protected activity.

116.     The nondiscriminatory reasons offered by the Defendant for the adverse action are false and pretextual.

117.     But for Plaintiff's race and protected activities, the Board would not have subjected her to the adverse employment actions.

118.     Plaintiff suffered, and continues to suffer, irreparable injury.

119.     Plaintiff has no adequate remedy at law.

120.     As a direct and proximate result of the Board's retaliatory actions, Plaintiff has suffered lost wages, emotional distress, direct physical injury, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

WHEREFORE, Plaintiff Doris Agbefe prays that this Honorable Court find that Defendant Board's conduct violated Plaintiff's rights under Title VI of the Civil Rights Act, and enter a judgment making the following findings and granting the following relief:

A.  Award Plaintiff all money reasonably calculated to compensate her for all the monetary damages sustained as a result of the discrimination and retaliation by Defendant;

B.  Award Plaintiff all money reasonably calculated to compensate her for her direct

physical injury and emotional distress sustained as a result of the discrimination by Defendant;

C.  Enter an order declaring that the Board's employment practices discriminated against Plaintiff on the basis of race retaliation;

D.  Enter an order declaring that the Board's discriminatory employment practices denied the student beneficiaries of the federal financial assistance of equal educational opportunity, resulting in segregation, exclusion, and other discrimination of the student beneficiaries;

E.  Expunge Plaintiff's personnel file of false, defamatory and prejudicial materials, including false evaluations and disciplinary content;

F.  Award back and front pay;

G.  Enter an order requiring a corrective action plan to remediate the injury to students due to Defendant' unlawful conduct;

H.  Award reasonable attorneys' fees and costs; and

I.  Award such other relief as it may deem just and equitable.

**COUNT V**
**VIOLATION OF 42 U.S.C. § 1983**
**DEPRIVATION OF EQUAL PROTECTION**

1-120.    Plaintiff Agbefe repeats and realleges paragraphs 1 through 120 above as though fully set forth herein.

121.    At all times relevant herein, Defendant Board and its officers were acting under color of state law.

122.    The Board deprived Plaintiff of her right to Equal Protection of the laws by failing to investigate Plaintiff's complaints of sexual harassment and hostile work environment,

failing to appropriately discipline students and maintain order in the classroom, covering up and/or failing to report student behavioral issues, and manifesting deliberate indifference to the on-going harassment of Plaintiff and other female employees.

123.     The Board has unconstitutional policies or customs of failing to report sexually-motivated misbehavior of the students, failing to investigate the misconduct of the students at York, failing to adequately train and supervise School District employees with regard to maintaining, preserving, and protecting teachers and staff from violations of their rights to a harassment-free workplace, personal security, bodily integrity, and equal protection of the laws.

124.     On information and belief, the School District has followed these unconstitutional customs and policies not only with regards to Plaintiff, but also with regard to criminal and/or tortious misconduct committed against other school district employees.

125.     The School District's policies and/or practices constitute disparate treatment of females and had a disparate impact against female employees.

126.     As a proximate result of the Defendant's actions, Agbefe has suffered lost wages and/or benefits, emotional distress, damage to her reputation, compensatory damages, and has incurred attorney's fees and costs.

WHEREFORE, Plaintiff Doris Agbefe prays that this Honorable Court find that Defendant Board's conduct violated Plaintiff's rights under the 14th Amendment to the United States Constitution, and enter a judgment granting the following relief:

A.     Award Plaintiff money reasonably calculated to compensate her for all the monetary damages sustained as a result of the conduct of Defendant;

B.     Award liquidated and punitive damages for Defendant's willful and/or malicious acts;

39

C.      Award reasonable attorneys' fees and costs; and

D.      Award such other relief as it may deem just and equitable.


**COUNT VI**
**TITLE VII – DISCRIMINATION (SEX)**

1-126.      Plaintiff Agbefe repeats and realleges paragraphs 1 through 126 above as though fully set forth herein.

127.      Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e, *et seq*. ("Title VII"), prohibits employment discrimination on the basis of sex in the terms and conditions of employment.

128.      Defendant discriminated against Plaintiff on the basis of her female sex, in violation of Title VII, in one or more of the following ways:

     a.   Plaintiff, female, was a member of a protected class;

     b.   Plaintiff's students, all of whom were male, at all relevant times were housed in maximum security detention facilities;

     c.   At all relevant times, Plaintiff's students were at risk for academic failure, criminal convictions, longer-term incarceration, and recidivism;

     d.   Violating the Student Code of Conduct, Plaintiff's students frequently engaged in sexual harassment and classroom violence, including taunts, sexually suggestive remarks, sexual assaults, and masturbation, in Plaintiff's classroom, commonly with impunity;

     e.   The Student Code of Conduct applied to schools throughout the Chicago Public

Schools, and compliance was mandatory, but the York administration turned a blind eye to its chronic violation in Plaintiff's classroom, contradicted the applicable procedures of the Department of Corrections, and failed to provide the disciplinary support;

f.  The York administration regularly underreported infractions of the Student Code of Conduct, in an effort to cover up its chronic violations;

g.  The York administration acquiesced in the violations of the Student Code of Conduct in Plaintiff's classroom, and thus endangered the safety of Plaintiff, unlike other schools in the CPS system, where the Student Code of Conduct was enforced, students' education was supported by consistent disciplinary structure, and students and faculty are afforded protection against a sexually hostile educational environment;

h.  The Board held the York students to grossly lower standards of conduct than students elsewhere in the Chicago Public Schools, although the York students are at higher risk for school violence, academic failure, future criminal conduct, and recidivism;

i.  The York administration thereby failed to provide appropriate discipline to the at-risk students in Ms. Agbefe's classroom, treating her unequally to teachers elsewhere in the Chicago Public Schools, where the Student Code of Conduct was enforced;

j.  The discriminatory and retaliatory failure of the York administration to inculcate and support disciplinary standards, and enforce the Student Code

41

of Conduct, resulted in a failure to correct antisocial behaviors, and to foster a safe employment environment;

k.  The York administration's failure to remediate the sexually abusive environment in Plaintiff's classroom undercut her authority in the classroom, interfering with her performance and effectiveness, and impaired the quality of educational services Plaintiff was able to provide to students;

l.  A well-educated African-American woman and teacher of the sciences, Plaintiff's value as a role model for her York students was tarnished by the willful failure of the York administration to address the misconduct;

m.  Put on clear notice of the failures of the York administration through the investigation and report of the OIG, the Board not only failed to intervene, but perpetrated a retaliatory cover-up, through the purported investigation and report of Deputy General Counsel James Ciesil;

n.  By disregarding the OIG's findings supporting Plaintiff's allegations, and retaliating against participants in the investigation, the Board deprived her of equal employment opportunity;

o.  In a report specifically naming Plaintiff Agbefe, Board Counsel James Ciesil publicly discredited Plaintiff on account of her sex, alleging that other teachers had no security concerns, and accusing her of falsehoods;

p.  In his report, Ms. Ciesil disparaged Plaintiff through a sexist stereotype, calling her "hypersensitive," and stating that Plaintiff expected—and should have expected—the sexually harassing behavior of the students when she went to teach at York;

42

q. Mr. Ciesil's biased findings were discriminatory and retaliatory on the basis of sex;

r. The Board refused Plaintiff's requests for a reassignment to a different division, despite her fear for her personal safety;

s. Defendant Board issued a negative and false performance evaluation to Plaintiff, thus limiting her opportunities for continued employment in the Chicago Public Schools, and for employment elsewhere; and

t. Similarly-situated male individuals employed by the Chicago Public Schools were treated more favorably than Plaintiff.

129. The Board had knowledge that Plaintiff was being subjected to sex discrimination and harassment on a routine basis.

130. As matters escalated, Plaintiff complained that such actions were affecting her mental and physical well-being, but her pleas for corrective action were ignored.

131. Through the actions set forth above, Defendant denied Plaintiff equal access to employment opportunities.

132. The Board refused to protect Plaintiff against discrimination and harassment, denying leave/accommodation, issuing false evaluations, and releasing and publishing a report with her confidential statements unredacted.

133. Plaintiff met the Board's legitimate employment expectations, yet they treated her less favorably than similarly-situated male employees.

134. Plaintiff has exhausted all administrative remedies.

a. On or about May 17, 2018, Agbefe filed a charge of discrimination with the Equal Employment Opportunity Commission and the Illinois Department of

Human Rights complaining of discrimination based on sex and retaliation. The EEOC referred the charge to the Department of Justice (DOJ) to determine whether the DOJ would file suit on the charge.

    b.   On December 9, 2021, the DOJ issued Plaintiff her Right to Sue letter, a true and correct copy of which is attached as Exhibit A.

135.    Plaintiff suffered, and continues to suffer, irreparable injury, for which Plaintiff has no adequate remedy at law.

136.    Defendant' actions were knowing, intentional, willful, and wanton. The Board discriminated against Plaintiff with malice and/or reckless indifference to her federally protectedrights.

137.    But for Plaintiff's female sex, the Board would not have subjected her to the adverse employment actions.

138.    As a direct and proximate result of the Board's retaliatory actions, Plaintiff has suffered lost wages, direct physical injury, emotional distress, loss of reputation, compensatory damages, and has incurred attorney's fees and costs.

WHEREFORE, Plaintiff Doris Agbefe prays that this Honorable Court find that Defendant Board's conduct violated Plaintiff's rights under Title VII of the Civil Rights Act, and enter a judgment making the following findings and granting the following relief:

A.  Enter an order declaring that the Board's employment practices discriminated against Plaintiff on the basis of sex;

B. Enter an order declaring that the Board maintained a hostile work environment at Consuella B. York High School, through acquiescence in student sexual harassment of plaintiff and other faculty, and concomitant failure to comply with applicable

disciplinary provisions for student conduct of the Chicago Board of Education, to comply with applicable prison regulations, or to maintain student discipline and support services sufficient to deter, control and remediate student sexual misconduct;

C. Award Plaintiff all money reasonably calculated to compensate her for all the monetary damages sustained as a result of the discrimination by Defendant;

D. Award Plaintiff all money reasonably calculated to compensate her for her direct physical injury and emotional distress, sustained as a result of the discrimination by Defendant;

E. Enter an order reinstating Plaintiff to a teaching position in areas of her certifications, at a rank and pay commensurate with her qualifications and years of experience;

F. Enter an order requiring expungement of Plaintiff's personnel file of false, defamatory and prejudicial materials, including false evaluations and disciplinary content;

G. Enter an order restoring Plaintiff's positive performance evaluations;

H. Enter an order directing the Defendant to cause the York administration to adhere to the CPS performance evaluation rubric, and to fairly administer its performance evaluations of staff;

I. Enter an order cancelling all unwarranted personnel actions against Plaintiff, and restoring her to the status she occupied prior to the discrimination;

J. Award back, front pay, and restoration of leave;

K. Enter a cease and desist order requiring, *inter alia,* a corrective action plan to

remediate the hostile work environment at Consuella B. York High School, including

the injury to faculty and students and faculty due to Defendant' unlawful conduct;

L. Award punitive damages;

M. Award reasonable attorneys' fees, costs, and expert witness fees; and

N. Award such other and further relief as this Honorable Court may deem just and

equitable.

## COUNT VII
## TITLE VII – RETALIATION (SEX)

1-138.    Plaintiff Agbefe repeats and realleges paragraphs 1 through 138 above as though

fully set forth herein.

139.    Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e, *et seq*. ("Title VII"),

prohibits retaliation against employees who complain of or oppose sex discrimination.

140.    Defendant retaliated against Plaintiff on the basis of her female sex in one or more

of the following ways:

    a.  Plaintiff's students were all male, low income, members of protected racial,

        ethnic and national origin classes, and at high risk for academic failure;

    b.  At all relevant times, Plaintiff's students were housed in maximum security

        detention facilities;

    c.  At all relevant times, Plaintiff's students were at risk for criminal convictions,

        longer-term incarceration, and recidivism;

d.  Violating the Student Code of Conduct, Plaintiff's students frequently engaged in sexual harassment and classroom violence, including taunts, sexually suggestive remarks, sexual assaults, and masturbation, in Plaintiff's classroom, commonly with impunity;

e.  The Student Code of Conduct applied to schools throughout the Chicago Public Schools, and compliance was mandatory, but the York administration turned a blind eye to its chronic violation in Plaintiff's classroom, contradicted the applicable procedures of the Department of Corrections, and failed to provide disciplinary support;

f.  The York administration regularly underreported infractions of the Student Code of Conduct, in an effort to cover up its chronic violations;

g.  The York administration acquiesced in the violations of the Student Code of Conduct in Ms. Agbefe's classroom, and thus endangered the safety of Plaintiff, unlike other schools in the Chicago Public School system, where the Student Code of Conduct was enforced, students' education was supported by consistent disciplinary structure, and faculty were afforded protection against a sexually hostile educational environment;

h.  The Board held the York students to grossly lower standards of conduct than students elsewhere in the Chicago Public Schools, although the York students are at higher risk for school violence, academic failure, future criminal conduct, and recidivism;

47

i.  The York administration thereby failed to provide appropriate discipline to the at-risk students in Ms. Agbefe's classroom, treating her unequally to employees elsewhere in the Chicago Public Schools, where the Student Code of Conduct was enforced;

j.  The discriminatory and retaliatory failure of the York administration to inculcate and support disciplinary standards, and enforce the Student Code of Conduct, resulted in a failure to correct antisocial behaviors, and to foster a safe employment environment;

k.  The York administration's failure to remediate the sexually abusive environment in Plaintiff's classroom undercut her authority in the classroom, interfering with her performance and effectiveness, and impairing the quality of educational services she could perform;

l.  A well-educated African-American woman and teacher of the sciences, Ms. Agbefe's value as a role model for her York students was tarnished by the willful failure of the York administration to address the misconduct;

m.  Put on clear notice of the failures of the York administration through the investigation and report of the OIG, the Board not only failed to intervene, but perpetrated a retaliatory cover-up, through the purported investigation and report of Deputy General Counsel James Ciesil;

n.  By disregarding the OIG's findings supporting Plaintiff's allegations, and retaliating against participants in the investigation, the Board deprived

Plaintiff of full access to employment opportunity;

o.  In a report specifically naming Plaintiff Agbefe, Board Counsel James Ciesil publicly discredited Plaintiff on account of her sex, alleging that other teachers had no security concerns, and accusing her of falsehoods;

p.  In his report, Ms. Ciesil disparaged Plaintiff through sexist stereotyping, calling her "hypersensitive," and stating that Plaintiff expected—and should have expected—the sexually harassing behavior of the students when she went to teach at York;

q.  Underplaying the credible evidence of sexual harassment at York, in his report, Mr. Ciesil retaliated by claiming that the staff members who were critical of Principal Sims and/or York were racially biased and/or disgruntled, formerly disciplined employees, thus depriving them of corrective measures to remedy their unequal treatment.

141.    Defendant' actions were knowing, intentional, willful, and wanton. The Board retaliated against Plaintiff with malice and/or reckless indifference to her federally protected rights.

142.    But for Plaintiff's female sex, the Board would not have subjected her to the adverse employment actions, including retaliation.

143.    Plaintiff suffered, and continues to suffer, irreparable injury, for which Plaintiff has no adequate remedy at law.

144.    Plaintiff has exhausted all administrative remedies.

a.  On or about May 17, 2018, Agbefe filed a charge of discrimination with the

49

Equal Employment Opportunity Commission and the Illinois Department of Human Rights complaining of discrimination based on sex and retaliation. The EEOC referred the charge to the Department of Justice (DOJ) to determine whether the DOJ would file a suit on the charge.

b. On December 9, 2021, the DOJ issued Plaintiff her Right to Sue letter, a true and correct copy of which is attached as Exhibit A.

145. As a direct and proximate result of the Board's retaliatory actions, Plaintiff has suffered lost wages, direct physical injury, emotional distress, loss of reputation, compensatory damages, medical expenses, and has incurred attorney's fees and costs.

WHEREFORE, Plaintiff Doris Agbefe prays that this Honorable Court find that Defendant Board's conduct violated Plaintiff's rights under Title VII of the Civil Rights Act, and enter a judgment making the following findings and granting the following relief:

A. Enter an order declaring that, due to her protected activities, the Board retaliated against Plaintiff on the basis of sex;

B. Award Plaintiff all money reasonably calculated to compensate her for all the monetary damages sustained as a result of the retaliation by Defendant;

C. Award Plaintiff all money reasonably calculated to compensate her for her direct physical injury and emotional distress sustained as a result of the retaliation by Defendant;

D. Enter an order reinstating Plaintiff to a teaching position in areas of her certifications, at a rank and pay commensurate with her qualifications and years of experience;

E. Enter an order requiring expungement of Plaintiff's personnel file of false,

defamatory and prejudicial materials, including false evaluations and disciplinary content;

F.  Enter an order restoring Plaintiff's satisfactory performance evaluations;

G.  Enter an order directing the Defendant to cause the York administration to adhere to the CPS performance evaluation rubric, and to fairly administer its performance evaluations of staff;

H.  Enter an order requiring a corrective action plan to remediate the injury to faculty, staff and students due to Defendant' unlawful conduct;

I.  Enter an order cancelling all unwarranted personnel actions against Plaintiff, and restoring her to the status she occupied prior to the retaliation;

J.  Award back and front pay, and restoration of leave;

K.  Award punitive damages;

L.  Award reasonable attorneys' fees, costs, and expert witness fees; and

M.  Award such other and further relief as this Honorable Court may deem just and equitable.


DATED:  January 14, 2022


          Respectfully submitted,


         By:  /s/ Elaine K.B. Siegel
            Attorney for Plaintiff


OF COUNSEL:

ELAINE K.B. SIEGEL & ASSOC., P.C.
P.O. Box 6486

Evanston, Illinois
60204
Tel: (312) 339-8088
ekbsiegel@aol.com
Atty. No. 6183905

## **CERTIFICATE OF SERVICE**

I, Bridget O. Marks, an attorney, do hereby certify that I caused the attached:

## **SECOND AMENDED COMPLAINT AND JURY DEMAND**

to be filed with the Clerk of the Court on January 14, 2022, using the CM/ECF system which sends notification of such filing to counsel of record.

*/s/ Bridget O. Marks*